## Lloyd *against* Leisenring.

All contracts or promises depending upon a bet on the result of an election
are null and void: ingenuity cannot invent any mode of evidencing such con-
tract, so that it can be enforced by law.

ERROR to the common pleas of *Northumberland* county.

John Leisenring against William A. Lloyd. Appeal from the
judgment of a justice of the peace. The plaintiff's cause of action
was founded upon the following order:

"If George Wolf has three hundred majority in Northumberland
county at the late election, deliver Henry Frick two suits of clothes
to the value of 70 dollars.                    WILLIAM A. LLOYD.

"October 10, 1832."

Indorsed, "October 18, Received the within,

                                               H. FRICK."

There was a good deal of evidence given by the defendant tending
to show that the plaintiff below and Henry Frick knew the result of
the election before the bet was made, and that they had gained this
knowledge by extraordinary exertions to collect the returns. And
evidence was also given by the plaintiff on the same subject.

The defendant requested the court to charge the jury:

1st. That the plaintiff is not entitled to recover upon the testimony
delivered in the case.

2d. If Leisenring had notice that the defendant refused to pay the
bet before he delivered the property to H. Frick, he cannot recover.

· The court answered that the second point was correct; but if the
jury believed that Leisenring was free from all collusion and unfair-
ness in regard to the bet, and delivered the goods according to the
defendant's order, before notice from the defendant, the plaintiff was
entitled to recover.

*Donnel,* for plaintiff in error, cited, *Stroud's Purd.* 449; 2 *Brown*
182; 4 *Peters* 436; 4 *Serg. & Rawle* 159, 173; 2 *Strange* 165, 1155;
3 *Watts* 263.

*Jordan,* for defendant in error, cited, 16 *Serg. & Rawle* 147; 3
*Penn. Rep.* 468.

[Lloyd v. Leisenring.]

The opinion of the Court was delivered by

Huston, J.—By an act of assembly passed the 24th of March 1817, it is provided, that whereas the practice of laying wagers or bets on the event of elections or the success of candidates for public offices has a great tendency to promote immorality and corruption: therefore be it enacted,

Section 1st. Wagering or betting on the event of an election, held under the constitution or laws of the United States or the constitution or laws of this commonwealth, is hereby prohibited; and all contracts or promises founded thereon declared to be entirely null and void.

Section 2d goes on to make it a misdemeanour, and indictable.

The language of Chief Justice Tilghman in 4 *Serg. & Rawle* 162, though applied to another act of assembly, is entirely appropriate to this. "Upon the perusal of the act of assembly we perceive an intent to cut up lotteries by the root; and it enacts in the most comprehensive terms, that all lotteries whatever, whether public or private, are common and public nuisances, &c." This, says he, was the wiser course, for it being impossible to foresee all the different schemes that ingenuity might devise, it would have been dangerous to enter into particulars. In that case, in the opinions of the several judges, and in Smith *v.* Mitchell, 1 *Binn.* 110, the doctrine is laid down,'that all contracts which have for their object any thing which is repugnant to justice or against the general policy of the common law or the *provisions of a statute*, are void; and where a contract or agreement is entered into with a view to violate any of their principles or provisions, there is no form of words however artfully introduced or admitted, and no evidence of contract which ingenuity can suggest, which will give effect to a contract expressly prohibited or declared null and void. No man can come into a court of justice and recover on a contract expressly prohibited by law.

But it is said the case in M'Allister *v.* Hoffman, 16 *Serg. & Rawle* 147, had decided, that a stake holder of a bet on an election, who pays it over to the winner without being forbidden by the loser, is not liable to the person who deposited the money. In the first place, that case decides a different point, viz. that the person who deposited the money may recover it from the stake holder who paid after notice not to pay: whoever reads the opinion of the present chief justice in that case, will see that he was disposed to enforce the law to its full spirit, and not permit it to be evaded under any pretence; and he regrets that the weight and number of authorities have prevented courts from giving remedy to the loser in all cases by permitting him to recover back the money lost. But this is not the case of a bet, and the money deposited by each party with a stake holder. If the judgment in the court below could be supported, the act is totally useless.

We pass over all the evidence given to show that the winning party had information as to the actual majority when he made this

[Lloyd v. Leisenring.]

bet.   We decide on the principle that it was a contract or engagement declared by the legislature to be calculated to promote immorality and corruption, and that it is declared to be utterly null and void.

In substance and effect the paper is a promise to pay Frick two suits of clothes if George Wolf has three hundred majority; or an engagement to pay Leisenring 70 dollars if he will pay Lloyd's bet when or if it is lost.   No one can avoid discovering that if this money is recovered, the act is a dead letter; that all contracts or promises founded on bets on the event of an election are not void; but that the act, instead of cutting up by the roots the practice of betting on elections, may be evaded by very simple contrivances.

By analogy to decisions on similar acts of the legislature, we will find that a construction has been given to them such as we have adopted in this case.   On no subject have courts shown more determination than in their decisions as to the validity of mercantile notes or bills of exchange when in the hands of a *bona fide* indorser.   Yet such note or bill, though held by an indorsee who paid full value for it, is not recoverable if it can be proved that it was given to secure money won at play ; and this because, if the law were not so held, the acts against gaming would be evaded by giving the obligations a particular form.   2 *Stra.* 1155.

To enforce this law according to its letter and its spirit, we must say, that the obligation on which this suit is brought is null and void, and perhaps human ingenuity cannot invent any mode of evidencing such contract, as that it will be available in a court of justice, if the fact that it was given to secure a bet made on the event of an election can be proved.

Judgment reversed.