## THE TRENTON MUTUAL LIFE AND FIRE INSURANCE COMPANY v. JOHN JOHNSON.

1. Where the declaration averred that the statements in regard to the health of the insured, annexed to a policy of life insurance were true, and the defendants pleaded specially that the said insured had been affected with certain diseases, and upon the trial the plaintiff proved that the particulars of the statement were true, it is not error for the judge to charge that under the pleadings and proofs the burthen of proof is on the defendants to show that their plea is true.

2. It is not necessary for the plaintiff in an action on a policy of insurance on the life of another, to show that he had an interest in such life.

3. Wagers on indifferent questions are not prohibited by the laws of this state.

---

This case was tried before Justice Nevius at the October term, 1851, of the circuit court of the county of Middlesex, when a bill of exceptions was taken to his ruling, the particulars of which sufficiently appear in the opinion of the court.

Argued before the CHIEF JUSTICE and Justice ELMER.

*Lupp* and *W. L. Dayton*, for the plaintiffs in error, insisted:

*First.* The court erred in overruling the testimony of Sheppard. Mr. Van Middlesworth was asked and answered the same question. Hearing was admissible as to this matter. Besides, have you heard, might mean have you heard Van Middlesworth himself say so.

*Second.* It was error to charge that the burthen of proof as to Van Middlesworth's health was on the defendants. The averments in the declaration on this point were material, and it was the duty of plaintiff to prove them. It was not a question of fraud; the statements marked A were in the nature of warranties.

*Third.* A still more material error was in charging that this was a valued policy as to the five hundred dollars payable to plaintiff himself, and that no interest in him need be proved. A life insurance, like any other insurance, is a contract of indemnity only. This was a wagering policy and bad. 3 *Kent*, 276; 2 *Smith's Leading Cases*, 202, 277; *Godsal* v. *Baldero*, 9 *East* 72; 2 *Mass. R.*, 1; 3 *Pick.*, 446; 10 *East*, 344; 1 *Marshall Juris.*, 104, 130, 133. A policy on the life of another without interest is a mere wager and against public policy and sound morality. Many of the states have declared such a policy void, and it ought so to be held in this state.

*H. V. Speer* and *Zabriskie*, for defendants in error, argued:

*First.* The evidence of Sheppard would have been hearsay and was inadmissible.

*Second.* The burthen of proof as to Van Middlesworth's health was on the defendants. The averment in the declaration on this subject were not material, and were not necessary to be proved. 4 *Halsted*, 188. Defendants were bound to prove their pleas. It was proved explicitly by the plaintiff, that the statements in A were true. It is expressly so stated in the bill of exceptions. The charge was, that under the proofs and pleadings the burthen was on the

defendant; that is, he was bound to show the contrary. No error in this: justice was done.

*Third.* This was a valued policy. No interest was required to .be proved. An action can be sustained on a wager. The case in 9 *East*, 72, turned on the English statute. 8 *Term R.*, 13 ; 2 *Johnson's Cases*, 333 ; 3 *Ib.*, 39 ; 3 *Caines*, 141 ; 6 *Cow.*, 318 ; 3 *Term R.*, 693 ; 4 *Johns. R.*, 426 ; 7 *Ib.*, 434 ; *Cow.*, 734 ; 2 *East*, 544 ; 10 *Johns., R.*, 406 ; 1 *Ryan & Moody*, 213 ; *Chitty Con.*, 394 ; 1 *Phillips In.*, sec. 5, *n ;* 3 *Taunt.*, 513 ; *Doug.*, 301 ; 2 *Phillips In.*, sec. 1217, 1178, 1183, 1187 ; 15 *Mass. R.*, 341 ; 2 *Greenl. Ev.*, sec. 409 ; 1 *Phillips In.*, sec. 356 ; 2 *Burr*, 1171. There is no statute prohibiting wagers generally as in some of the states. There was a sufficient interest in Johnson. Not necessary it should be direct. 2 *Greenl.*, sec. 409 ; 2 *New. R.* 303 ; *Park. on. In.*, 402, 403, 407, 463 ; 2 *East* 549 ; 3 *Day*, 108 ; 12 *Mass.*, 115 ; 3 *Sumner*, 142 ; 3 *Greenl. R.*, 44 ; 1 *Johns.*, 333 ; 1 *Sumner*, 401.

ELMER, J.    This was an action of assumpsit, upon a policy of insurance on the life of one John W. Van Middlesworth, appended to which was a statement of particulars marked A, containing, among other things, a statement that he had not been afflicted since his childhood with ruptures, fits, dropsy, &c., and that he had not been afflicted during the last seven years with any severe or constitutional disease; and there was an express declaration signed by the insured, that the said statement was correct, and an agreement that if any untrue or fraudulent allegation was contained therein, then all moneys paid to the company on account of the insurer should be forfeited. The declaration set forth the particulars of this statement, and averred that they were in all respects true. Besides the general issue, the defendants pleaded, secondly, that the statement of particulars was not correct, in that the insured had been afflicted with fits since his childhood, and also during the seven years immediately preceding the making of the policy with one or more constitutional diseases; and thirdly, that plain-

tiff caused the present and general health of the said insured to be described in the said statement otherwise than it really was, and by means thereof fraudulently induced the defendants to issue the policy. The plaintiff replied, that the statements were true, and that the general health of the insured was not in said statement described otherwise than it really was.

The first error relied upon for the reversal of the judgment was, that the court erred in overruling a question put to Charles L. Sheppard, a witness for the defendants below, viz: Whether he had not heard of Van Middlesworth's having fits before his leaving for California. If he had heard so, it would have been only hearsay evidence and therefore inadmissible. Nor do I see that there was anything in the fact that another witness had been asked and answered the same question, to vary this rule. If it was meant, as was insisted, to inquire whether he had heard this from Van Middlesworth himself, the question should have been so put.

Upon the trial, the plaintiff gave the necessary preliminary proofs of the making of the policy and death of Van Middlesworth; and also proved the truth of the statements in the declaration and the statements accompanying the policy, and then the respective parties offered additional proofs as to the state of health of the said Van Middlesworth at and before the date of the policy. The defendants requested the court to charge and instruct the jury, that under the pleadings in the case it was not incumbent on the defendants to show by way of defence that the insured was not a sound or insurable life; but the court instructed and charged the jury that under the pleadings and proofs offered by the plaintiff, it was incumbent on the defendants to show that Van Middlesworth was an unsound and uninsurable life, and that the burthen of proof was on the defendants to establish the defence contained in the second and third pleas. This charge was excepted to, and forms the second ground of error now insisted on.

The general rule undoubtedly is, that the party who

alleges the affirmative of any proposition shall prove it; and another general rule is, that fraud is not to be presumed. In the case of *Leete* v. *The Gresham Life Insurance Society*, 7 *En. L. and E. R.* 578, a declaration or statement accompanied the policy similar to that in the present case, and the defendants put in a plea averring that certain material allegations in the statement were untrue. Baron Parke, before whom the case was tried, ruled that the burden of proving the allegations to be untrue was on the defendant, and that supposing no evidence was given in support of the plea, the plaintiff would be entitled to recover, assigning as one reason, that the allegations of the plea were allegations of falsehood, amounting to fraud in the assured, and must therefore be proved by the party making them, the presumption being always in favor of innocence and against fraud : and the court refused a new trial. In the case before us the allegations denied by the pleas were purely negative, and the second plea avers affirmative facts, namely, that the insured had been afflicted with fits since his childhood, and had been, during the seven years immediately before the making of the policy, afflicted with one or more constitutional diseases, in the said statement disclaimed and denied. The third plea is a direct averment of fraud. I am inclined therefore to think that the averments on this subject in the declaration are immaterial, and that had there been no proof as to these negative averments or to show fraud, the presumption of innocence would have entitled the plaintiff to a verdict. But whether this be so or not, the bill of exceptions states that he proved by two witnesses the truth of the said statements. Under these circumstances, I do not think it was an error so affecting the merits of the case as to require us to reverse the judgment, for the court to instruct the jury that under the pleadings and proofs, it was incumbent on the defendants to show that Van Middlesworth was an unsound and uninsurable life, and that the burthen of proof was on the defendants to establish the defence contained in the second and third pleas. It amounted, at most, to an instruction that not only

by reason of the presumption of innocence, but also by reason of the proofs adduced by the plaintiff, that his statements were true, the burthen was thrown on the defendants of counteracting this proof and of showing that the defence set up in the special pleas was sustained. The evidence on both sides, bearing on this part of the case, appears to have been fully summed up by the judge, and fairly submitted to the jury.

But the error principally relied on, and the one most important is, that the court refused to charge as requested, "that under the facts proved the plaintiff had not shown an insurable interest to the full amount of the policy; that the policy was not a valued policy, but a policy of indemnity, and that the defendants were not bound to the full extent of the insurance unless on proof to such extent of the value of such interest;" and that on the contrary, the court charged, "that under the facts proved, and considering that the nature and extent of the plaintiff's interest was truly stated to the defendants, at the time the insurance was effected, so far as the question of interest was concerned, sufficient was shown on the part of the plaintiff to entitle him to recover to the full amount of the policy. A policy of life insurance is a valued policy. Where a man effects an insurance upon his life, the amount to be recovered is the amount insured, there can be no other measure. In such cases insurers are bound to the full amount of such insurance, without proof of the value of interest to that extent."

The policy was effected by Johnson, the plaintiff, and Van Middlesworth, jointly, for the sum of one thousand dollars, for the use, benefit and account of the said Johnson to the amount of five hundred dollars, and for the use, benefit and account of the said Van Middlesworth, to the amount of five hundred dollars; and the declaration avers that the plaintiff, at the time and until the death of the said Van Middlesworth, was interested in his life in a large amount, to wit, the amount of five hundred dollars. The objection made on the trial, to the recovery for want of interest, and the charge on that subject, had reference only to the sum of five hundred

dollars, insured for the benefit of Johnson, no objection having been made on that score to the recovery of the five hundred dollars insured for the benefit of Van Middlesworth himself. The declaration also avers that the nature of the plaintiff's interest in the life of Van Middlesworth was stated to the agents of the company, and the bill of exceptions shows that this averment was sustained by the proof. His interest was this : Van Middlesworth and the plaintiff, together with certain other persons, had entered into an association called The New Brunswick and California Mining and Trading Company, the capital stock of which consisted of forty-five shares, of six hundred dollars each. The members were partly shareholding members and partly active members ; the shareholders being required to furnish a substitute to proceed to the mines of the company. The plaintiff owned one share, advanced six hundred dollars of capital, and procured Van Middlesworth to go out as his substitute, which he did and acted as his agent and substitute, and the assets of the company having been divided in California, before his death, he received the plaintiff's share, dying before he had returned and paid over the same. By one of the articles of the association, all treasures and all the proceeds of the labor of each member, and all profits, were to go into the general fund for the benefit of the whole.

On behalf of the plaintiffs in error, it was insisted that the contract of insurance is simply a contract of indemnity, and that the plaintiff below having failed to show an interest in the life of Van Middlesworth, to the extent of five hundred dollars, was not entitled to recover that sum, and that the judge erred in not so charging. Our first inquiry, therefore, must be as to the nature of the contract itself.

The case of Godsal v. Baldero, 9 East, 72, is the leading case relied on to show that a contract of life insurance is simply a contract of indemnity, not only requiring an interest in the assured in order to give validity to it at its inception, but continuing good only so far as it is rendered so by the permanence of such an interest. This case has been since adhered to and has often been considered as founded

on the common law, an impression to which some countenance is given by some of the language used by Lord Ellenborough in giving the opinion of the court.  It is evident, however, that the decision was warranted, not by the common law, but by the statute of 14 *Geo.*, 3, *c.* 48, which does not purport to be a declaratory act, but enacts in express terms, that no insurance shall be made on the life of any person wherein the person for whose use such policy shall be made shall have no interest, and that in all cases where the insured hath interest in the life, no greater sum shall be recovered or received from the insurers than the amount or value of the interest of the insured in such life.  This statute not extending to Ireland, the courts in that country have held in several recent cases, that at the common law, policies of insurance are valid without any interest.  *Ferguson* v. *Lomax*, 2 *Dru. & Walsh*, 120, 238 ; *Brit. In. Co.* v. *Magee, Cook & Al.*, 182 ; *Scott* v. *Roose, Long & Town Ir. R.*, 54 ; *Shannon* v. *Nugent*, 1 *Hayes' Ir. R.*, 539, cited in *Bunyon on Life Insurance, p.* 11.

No such statute exists in this state.  Whether an action can be sustained on a policy without interest, which is therefore in some respects like a mere wager on the life of a third person, or on any other wager relating to a transaction in itself legal, does not appear to have been decided by our courts.  The case of *Mulford* v. *Bowen*, 4 *Hal.* 315, was an action upon a wager about the weight of a hog, in which the judgment was reversed upon the ground of variance, no notice having been taken by the court of the general question, although it was directly involved, and was argued by the counsel.  In the case of *Hutchinson* v. *Targee*, 2 *Green*, 386, a wager policy depending upon the result of a lottery, was held void, upon the special ground that it contravened the policy of the act for suppressing lotteries.  Wagers on indifferent questions are held good grounds of action in England ; and it was there held that at common law wagering policies of insurance were valid.  *Crawford* v. *Hunter*, 8 *Term R.* 13.  In New York, actions on wager policies and other wagers, were sustained, until a statute was

passed declaring them illegal. *Buchanan* v. *Ocean In. Co.*, 6 *Cow.* 318. In several other states, where statutes existed prohibiting gaming in such terms as were held to include all wagers, wager policies have been declared illegal. *Amory* v. *Gilman*, 2 *Mass. R.* 1; *Babcock* v. *Thompson*, 3 *Pick.* 446; *Adams* v. *Penn In. Co.*, 1 *Rawle R.* 107; *Lloyd* v. *Leisenring*, 7 *Watts* 294; *Collamer* v. *Day*, 2 *Verm.* 144. The American text writers strongly favor the doctrine that wager policies should in all cases be held bad, upon general principles of policy and morality. 3 *Kent* 277; *Duer In.* 92; *Angell on Life and Fire In., S.* 14 *Intr.* I confess, however, that whatever might be my opinion as to the expediency of a statute like that in England, before quoted, I must agree with the Irish courts in holding that such is not the law. Our act to prevent gaming (*Rev. Stat.* 572) does not, in terms or by implication, prohibit all wagers, but only particular kinds of gaming. Until the legislature shall think proper to interfere, the courts can only adhere to the common law as they find it established. To do otherwise, would be an act of legislation, and not of judicial construction.

It was insisted by counsel, and with much apparent force, that wagers on the life of a third person are in their very nature dangerous, and contrary to the policy of the law, and to sound morality. But the danger, if any exists, would apply with great, although not with equal force, to policies where there is an interest, as well as to those where there is none. All life insurances have been prohibited in some countries. The objection made to the wager in the case of *Gilbert* v. *Sykes*, 16 *East* 150, was not merely that a wager on the life of another would endanger his assassination, the fear of the law being deemed sufficient to countervail that, but that the bet was on the life of Napoleon, a foreign sovereign, and grew out of a conversation upon the probability of his being assassinated, so that to entertain an action on it was considered to contravene public policy. As was well remarked in the argument of that case, such an objection would apply with equal force to cases for the life of a third person, which have never been held illegal. The cases of

*Earl of Chesterfield* v. *Jansen*, 1 *Atk.* 346, 2 *Ves.* 25, and of *March* v. *Pigot*, 3 *Burr.* 2803, are direct authorities in favor of the legality of such wagers. And the same principle is sanctioned by the cases which uphold *post obit* securities, where in consideration of an immediate advance of money, bonds are given, or contingent or reversionary property charged, for the payment of a much larger amount, upon the death of a particular person. *Curling* v. *Marquis Townsend*, 19 *Ves.* 628; *Free* v. *Hinde*, 2 *Sim.* 7.

Modern experience has proved the value of insurances upon the insurer's own life, or upon the life of another, upon whom the insurer may be dependent, or in whose life he has a real or supposed interest. And it is worthy of notice, that even in England since the statute, so great is considered the injustice of requiring the continued subsistence of an insurable interest, that in practice it is disregarded, and the offices find it to their interest, and are in the common practice of paying, without any inquiry as to the interest. *Bunyon*, 23; *Barber* v. *Morris*, 1 *Moo. and R.* 66. An insurance upon life has, in fact, but a remote resemblance to a marine or fire insurance. In the latter, the particular object is to indemnify against a pecuniary loss; and the event upon which the money is made payable, is the happening of the loss, the contract being in terms to pay whatever is lost, not exceeding a specified sum. But a life insurance is a contract to pay a certain specific sum on the happening of a particular event, which may or may not occasion a pecuniary loss. Where that event is the death of the insured himself, there is nothing like an indemnity against loss to him, for he can never receive the money. In such a case, the object is to provide for some relative or friend, or creditor, and this person who is to be benefitted by his death has, in many cases, the same motive to desire it, as in the case where the premium is paid and the insurance obtained by a third person. Upon a view of the whole matter, I think it admits of great doubt whether the English statute, by throwing impediments in the way of life insurances, and by raising questions often of difficult solution as to the nature and amount

of the required interest, can be regarded as wise and salutary. At all events, in the absence of any such legislation here, I see no solid ground upon which we can safely depart from the doctrines of the common law, and upon reasons of doubtful expediency, hold a policy of life insurance to be something different from what it purports to be—that is to say, a contract to indemnify against loss, and not a contract to pay a given sum, upon the happening of a particular event.

But if it be admitted that an interest in the life of Van Middlesworth on the part of Johnson, was necessary to be shown, I think it satisfactorily appeared that he had such interest. It is clear that the policy was entered into not as a cover for a wager, but for the *bona fide* purpose of securing Johnson against what he and the company regarded as a danger of real pecuniary loss. The interest required need not be such as to constitute the basis of any direct claim in favor of the plaintiff upon the party whose life is insured; it is sufficient if an indirect advantage may result to the plaintiff from his life, and therefore the reciprocal interests of husband and wife, parent and child, and brother and sister, in the lives of each other, are sufficient to support the contract. 2 *Greenl. Ev.* § 409 ; *Lord* v. *Dall*, 12 *Mass.* 115. In a case before the circuit court of Albany, three persons, V., M. and S., entered into a co-partnership to carry on the liquor business. S. undertook the business, and against the capital of V. and M., was to put in his skill. S. insured his life for ten thousand dollars, and by the articles of co-partnership, in case of his death without children, or unmarried, his partners, V. and M., were to receive this sum secured by the policy. S. shortly afterwards died unmarried, M. assigned his interest to A., and A. and V. sued to recover the insurance. The court held that V. and M. had an insurable interest, and were entitled to recover. *Valton et al.* v. *National L. F. Life Ass. So. Angel on L. and F. In., p.* 326, *n.* In the present case, Johnson had a direct interest in the life of his substitute, whose earnings were to constitute a part of the joint funds, of which he was entitled to his share, an interest fully equivalent to the interest of a

wife in the life of her husband, of a child in that of a parent, or a sister in that of a brother. And at Van Middlesworth's death, although prior to that time the company had been virtually dissolved, he had an interest in him as his creditor, to the extent of his share of the assets in his hands.

I am, therefore, of opinion that there was no error in the ruling excepted to, and that the judgment must be affirmed.

The CHIEF JUSTICE concurred.