are left to the jury on slight circumstances, and the maker of a note is entitled in such a case to go into evidence, to show that the note was paid, as between him and the payee.    3 Term Rep. 80, 81.

The court declared their opinion, that this case seemed to be within the rule as restrained in 3 Term Rep. 34, 36, but avoided giving any decided judgment thereon, and declared, that in the case of frauds* they would go great lengths in the admission of evidence.    In the present instance they thought the testimony might be spared, unless strong evidence was adduced on the part of the plaintiff.

The counsel at length agreed that the answers of Antill should be read, and Mr. Conner be sworn as a witness ; but after hearing Antill's testimony, the plaintiff declined examining his witness, and became nonsuit.

Mr. Heatley, *pro quer*.

Messrs. Ingersoll and M. Levy, *pro def*.

---

ROBERT GILCHREEST (for the use of EDWARD FOX) *against* CARLISLE POLLOCK.

A contract for the sale of 6 per cent. stock is lawful: and where such sale is made at a stipulated price, payable and deliverable at a future day the contract is for concurrent acts, and vendor is not bound to make the transfer without receiving the money.

SPECIAL action on the case, by way of *colloquium* on the *guarranty* of a written engagement, in these words :—"I promise to pay to Robert Gilchreest or order 24,500 dollars specie, on the 15th September 1792, on Edward Fox or Robert Gilchreest delivering to me 20,000 dollars of 6 per cent. stock of the United States, at 24s. 6d. in the pound. New York, November 14, 1791.    Subscribed John Wilkes."    Indorsed, Guaranteed for the faithful performance of the within contract,
                                        CARLISLE POLLOCK.
And further indorsed                  "ROBERT GILCHREEST."

There was also a counter engagement signed by Edward Fox, in these words :—" I promise to transfer to Robert Gilchreest or his order, 20,000 dollars of 6 per cent. Stock of the United States, for 24,500 dollars specie, on the 15th September 1792.    "November 9th, 1791." Indorsed " Robert Gilchreest."

* In a case of fraud, one may be a witness to invalidate his own deed. 2 *Atky*. 228.

It appeared in evidence that the plaintiff being possessed of the 6 per cent. stock, appeared on the 15th September, 1792, in the office of John Cochran, esquire, commissioner of loans in New York, and offered to transfer the stock, but Wilkes did not attend. Gilchreest then called upon him and repeated his offer ; he answered, that others had not performed their contracts with him, and he could not keep his agreement, but desired the other to transfer the stock to him. This was refused, unless he would pay the 24,500 dollars. The plaintiff then called on the defendant, and offered to make the transfer, on payment of the money, but was referred to Wilkes.

The 6 per cent. stock of the United States had then fallen to 22s. in the pound. Wilkes shortly afterwards became insolvent, and the present suit was brought against Pollock on his indorsement.

Mr. S. Levy for the defendant, contended that here was no consideration either express or implied, whereon the defendant's promise could be said to rest. The contract was not legal, nor were the remedies mutual on the exchange of the written instruments ; and cited 3 Term Rep. 80, 421. Even the consideration of a bill of exchange is inquirable into, and if it should be given without any, or an illegal consideration, the whole matters might be examined. He further cited 4 Burr. 2232. 1 Powell on Contra. 330, 331, 348, 355, 357, 458.

Mr. Rawle on the same side urged, that courts of justice would not strain matters in such a case to give the plaintiff damages. Contracts of this nature tend to discourage industry. The claim of the plaintiff should be both legal and equitable before he can call on a jury to execute the agreement. The remedy on both sides should be mutual. Here there is no mutuality. It is a rule, that where the defendant has a remedy for the consideration of a promise, that consideration need not be averred to be performed. 1 Powel on Contra. 359. But they must both be made at the same time, or else they will both be *nuda pacta*, Ib. 860.

Here Fox's promise was made on the 9th November 1791, and Wilkes's on the 14th November. Neither Wilkes nor Pollock could maintain a suit on the counter engagement. The indorsement on the writing is of no avail. Negotiable paper is confined to bills of exchange, promissory notes, and bonds.

Moreover, the plaintiff should have transferred the stock to Wilkes, and then on his inability to pay, he might have recurred to the defendant. He had two remedies, and was bound to

choose one of them.   He might look to Wilkes alone, without making
a transfer, or to the defendant after such transfer made.   In executory
contracts, if the agreement be that one shall do an act, and for the do-
ing thereof, the other shall pay, &c., the doing of the act is a condi-
tion precedent to the payment, and the party who is to pay shall not
be compelled to part with his money till the thing be performed for which
he is to pay.   1 Salk. 171.   A tender and refusal might amount to a
performance as to the principal, but not as to the guarantor.   1 Stra.
535.   Here there is no more than a bare, conjectural, inferred refusal,
on the part of Wilkes, which is not sufficient to entitle the plaintiff to
recover in this suit.   2 Stra. 833.

Mr. Ingersoll for the plaintiff answered, that the defendant's conduct
was not far removed from swindling.   If 6 per cent. stock had risen
in September 1792, the principal, Wilkes, or his surety, Pollock, would
have had no conscientious scruples as to taking the benefit of the mar-
ket.

The statute against stock-jobbing is peculiar to England, and was
only intended to operate against the party, who had no stock, attemp-
ting to make contracts therefore ; and sales under certain circumstances
merely are restricted thereby.

As to the want of consideration, it will scarcely be expected that the
plaintiff should show the consideration which induced the defendant to
enter into the guaranty.   A person who lends his name by way of
accommodation to obtain money from one of the banks, might thus pre-
tend want of consideration, but surely the objection could never pre-
vail.   A voluntary note or bond may be good, as between the parties
themselves.   There was a *quid pro quo* between Gilchreest and Wilkes,
and the defendant might lawfully undertake for the fulfilment of the
contract on the part of the latter.

The agreement is perfectly mutual.   Though the written instrument
is not negotiable, and therefore could not entitle Wilkes to sue in his
own name, yet in case Fox had failed in performance of his part of the
contract, a suit might have been instituted against him in Gilchreest's
name, and the latter would not be allowed to discontinue, under the au-
thority of M'Cullum v. Coxe. Dall. 139.   They had therefore the same
remedy as Fox had, the using of Gilchreest's name.   As to the mutual
promises not being made at the same time, the contract began on the
9th November, but was not completed until the 14th, when the
interchange took place.   But at any rate, the day of the de-
livery of the written engagement may be considered as the date,

which is as wise material; and consequently, the promises may be deemed as made at the same instant.

There can be no difference in point of performance, between the principal and surety. Whatever tender and refusal would operate as a performance against the former, would be equally effectual against the latter. In a suit against either, the plaintiff was not bound to make an actual transfer of the stock, unless he had received the stipulated sum of money. The contract was for concurrent acts. The stock was deliverable, and the money payable at the same moment of time, and the plaintiff has fully entitled himself to a recovery of compensation, by performing both substantially and formally every thing to be done on his part. More could not be expected from him; he had the stock ready to be transferred, attended at the proper office for that purpose, and offered both to the principal and surety to make the transfer. In 1 Stra. 535, it is laid down, that in *consideratione præmissorum* mean the covenant to transfer, and not the actual transfer, for which the defendant has his remedy.

The court gave it in charge to the jury, that the plaintiff was clearly entitled to recover the difference of 2*s*. 6*d*. in the pound on the 6 per cent. stock agreed to be delivered. The contract was for concurrent acts, and there was no condition precedent. The remedy on each side was mutual.

The sale of stock is neither unlawful nor immoral. It is confessed, that an inordinate spirit of speculation approaches to gaming, and tends to corrupt the morals of the people. When the public minds is thus affected, it becomes the legislature to interpose. But we have no such law at present. Call the 6 per cent. stock so many bushels of wheat, if it had fallen in price on the day of delivery, and the vendor was then ready and willing, and offered to perform his contract in all its parts, ought not the principal or his surety to make him full compensation? If the wheat had risen in price, would not the adverse party be enabled to get like compensation, in case the vendor had receded from his bargain?

Verdict *pro quer.* for 1121*l.* 17*s.* 6*d.* damages.