WINDSOR,
February,
1829.

### GEORGE W. COLLAMER *vs.* IRA DAY.

One cannot recover for property won of another on a wager, *That a certain chaise, then in sight was the property of A B.*

This was an action of *trover*, brought up from the County Court for the revision of their decision presented in the following case, agreed to by the parties, to wit :

" In this action, plaintiff offered to prove, at the trial, that, on the day mentioned in the declaration, the plaintiff and defendant were together in the office of *Jacob Collamer*, at *Royalton*—that

WINDSOR,
February,
1829.

Collamer
vs.
Day.

while there, a gentleman passed in a chaise: when defendant asked, whose chaise is that? Plaintiff answered, *Dr. Denison's.* Defendant said no, it is not *Denison's* chaise: I will bet my watch against yours that it is not *Denison's* chaise—That to this proposal plaintiff agreed—That each of the parties then took out his watch, and laid it upon the table: and it was then mutually agreed by the parties, that they would go together, and ascertain whether the said chaise was the said *Denison's* chaise; and that, if it was, plaintiff should take both watches; and, if not, defendant should take both, as and for his own—That they did proceed and examine, and found it to be said *Denison's* chaise—That the parties then returned to the said office, and the defendant immediately took up his watch, and carried it away—That, on the same day, plaintiff demanded said watch of defendant, who refused to deliver it, but converted it to his own use.

This evidence was objected to by the defendant's counsel, and excluded by the Court. To which decision the plaintiff excepted, and the exception was allowed, and the cause ordered to pass to the Supreme Court.

*Mr. Marsh, for the plaintiff,* contended, That by the common law, a wager in general, is legal, if it be not an excitement to a breach of the peace, or to immorality; or if it do not affect the feelings or interests of a third person, or expose him to ridicule, or libel him; or if it be not against sound policy;—and that the wager in question could not lead to any of those consequences. He cited, among other authorities, 2 *T. Rep.* 693.—*Cowp.* 37.

The counsel, also, contended, that actual delivery of the property, in this case, was not necessary in order to vest the property in the plaintiff, and to enable him to maintain *trover;* and cited *Loft,* 219.—*Cro. Eliz.* 866.—1 *T. Rep.* 56.—7 *id.* 9.—1 *Salk.* 113.—1 *Strange,* 165, *Atkins* vs. *Barwick.*

The Court declined hearing *Mr. Everett,* for the defendant.

The opinion of the Court was delivered by

HUTCHINSON, J.—Nothing appears in this case, but that the action would be maintainable by the common law of *England.* The common law is adopted by our statute, so far, and so far only, as the same is applicable to our local situation and circumstances, and is not repugnant to the constitution, or to any act of the legislature, of this state. Whether applicable, or not, must necessarily be a question of judicial decision: and this is, probably, the first action, that has ever called upon a court in this state to sanction such a contract of betting. The Judges of the Courts in

T

*England* have expressed their regret, of late years, that such transactions ever received the sanction of a court of justice : but, they yield to the force of the law, which they consider settled by a train of decisions, extending down from remote antiquity. We feel no such embarrassment, nor are we willing to transmit any such embarrassment to our successors ; nor diffuse into society the influence of a rule so demoralizing, as would be the sanction of such a contract. It is honorable to this state, that the industrious and moral habits of our citizens have furnished no occasion to litigate questions of this nature. It is honorable to the legislature, that they have interposed checks to such games and sports as they supposed were creeping into use. By the *Statute of* 1821, *page* 268, penalties are affixed to the winning or losing, or betting, in money, goods or chattels, on any game, or on any horse-race, or other sport, within this state. And said statute makes void any contracts and securities made and given for money won on such games.

The species of betting now in question may not come within that statute, giving it the strict construction of a penal statute : yet the good morals of society require, that no encouragement should be afforded to the acquisition of property, otherwise than by honest industry. Time might be occupied in seeking occasions to take advantage of the unwary, and acquiring a skill to take such advantage, which ought to be devoted to better purposes.

In this case, according to the terms of the bet, the plaintiff had acquired a right to the possession of the watch, which the defendant had laid down in the bet, but the plaintiff had not acquired the actual possession, when the defendant resumed his possession. The plaintiff, therefore, had no complete right to the watch, without the sanction of such a contract of betting. That sanction is now withheld, and

     The judgment of the County Court is affirmed.

*Marsh,* for plaintiff.

*Everett,* for defendant.