HORATIO S. NOYES *v.* REUBEN SPAULDING.

*Construction and performance of contract to transfer rail road stock. Wagering contract. New trial.*

The transfer of a certificate of stock in the V. & M. R. Co., (a Massachusetts corporation,) with an assignment, upon its back, of the stock thereby represented, and a power to the

transferee to effect a transfer of the same on the books of the company, is a valid transfer of the stock itself and vests the title to it in the transferee;—and the tender of such a certificate, assignment and power is a sufficient compliance with a contract to furnish or cause to be furnished the number of shares thereby indicated.

A contract, upon the sale of a certain number of shares of railroad stock, for the transfer by the vendee to the vendor of the same number of shares, at a future day, for a specified price, does not, without a stipulation to that effect, require the vendee to keep and retransfer the same identical stock which was conveyed to him.

Nor will such a contract be affected by the exercise, by the railroad company, of a right which they have, to mortgage their road its property and franchise, or to issue new or additional stock at a less nominal value per share; or by the exercise of their right to unite with another railroad company in a manner authorized by their charter.

The case of *Collamer* v. *Day*, 2 Vt. 144, in reference to the illegality of wagering contracts cited and approved.

But a contract for the sale and transfer, at a future day and for a specified price, of a given number of shares of railroad stock, which the vendor then actually has and of which an actual transfer is intended, is not a stockjobbing or wagering contract.

A new trial will not ordinarily be granted unless it appear that injustice has been done; that there was no want of diligence on the part of the petitioner; and that the subject matter on which the application was founded will probably, on another trial, produce a different result.

DEBT on a bond executed and delivered by the defendant to the plaintiff, the obligatory part of which was in the common form, in the penal sum of three thousand dollars, dated August 21, 1848. The condition was as follows:

"The condition of this obligation is such that if the above "bounden obligor, his heirs, executors, or administrators, shall and "doth well and truly pay, or cause to be paid unto the above named "obligee, or to his certain attorney, representatives, or assigns, on "the twenty-first day of August, in the year of our Lord one "thousand eight hundred and fifty-one, fifteen hundred dollars, for "twenty shares of the Vermont and Massachusetts Railroad Com-"pany's stock, at that time to be delivered by the above named "obligee, without fraud or delay, then the preceeding obligation to "be void, otherwise to remain in full force and virtue."

It appeared that at the time of the execution and delivery of said bond the plaintiff exchanged with the defendant a house and lot in the village of Brattleboro for a house and lot in the village of Hinsdale, N. H., and twenty shares of the Vermont and Massachusetts Railroad Company's stock of the 75 per cent. issue ; and that as a part of the trade, whereby said property was exchanged,

the foregoing bond was executed ; as was also one from the plaintiff to the defendant, of the same date and penal sum, obligating the plaintiff to furnish or cause to be furnished to the defendant on the 21st of August, 1851, " twenty shares of the Vermont and " Massachusetts Railroad Company's stock, for the sum of fifteen " hundred dollars, then to be paid by the said Spaulding." At this time said stock was selling at the brokers board, in Boston, for about $66,00 per share. On the twenty shares which the plaintiff received of the defendant, assessments to the amount of about $900,00 only had been paid, and the plaintiff soon afterwards paid the remaining assessments, amounting to about $600,00 ; and on the 9th of June, 1849, he sold them for $846,63 net, or about 42⅓ dollars per share. During the year 1849 said railroad company issued from 12 to 14000 shares of stock at $50,00 per share, which was voted on the 5th of September, 1848, and on the 11th of July, 1849, they mortgaged their road, its property and franchise for the payment of about $1,100,000,00 of bonds issued by them, which remained unpaid, and the mortgage undischarged, at the time of the tender hereafter mentioned. On the 6th of February, 1850, the plaintiff bought twenty shares of the stock of said company for $551,37, or about 27½ dollars per share, for which he received a certificate signed by the president and treasurer of the company in the following form, viz.

" Be it known, that H. S. Noyes is proprietor of twenty shares " of the capital stock of the Vermont and Massachusetts Railroad " Company, subject to the provisions of the charter and by-laws of " the corporation ; the same being transferable by an assignment " thereof in the books of said corporation, or by conveyance, in " writing, recorded in said books. And when a transfer shall be " made, or recorded in the books of the corporation, and this cer- " tificate surrendered, a new certificate or new certificates will be " issued.

Dated at Boston, this 6th day of Feb. 1850.

On the 21st day of August, 1850, the plaintiff, at Brattleboro, tendered to the defendant said certificate with an assignment under seal, on the back of said certificate, which was executed and acknowledged by the plaintiff and was in the following words, viz.

" In consideration of fifteen hundred dollars, to me paid by Reuben

"Spaulding, of Brattleboro, in the county of Windham, I hereby "sell, transfer, and set over to the said Reuben Spaulding, the "within named twenty shares of the capital stock of the Vermont "and Massachusetts Railroad Company, to hold the same to him "the said Reuben Spaulding, his heirs and assigns forever.

"And I do hereby authorize the said Spaulding to do any and "all acts he may deem proper to effect a full transfer to him of said "stock on the books of said company."

The plaintiff at the same time demanded of the defendant the fulfilment of his bond. The defendant refused to do this or accept the certificate tendered, saying that the stock was not transferred on the books of the company, (which was true in fact,) and that the certificate tendered was of no value to him. The value of the stock at this time, as indicated by the sales at the brokers' board, in Boston, was about $27\frac{1}{2}$ dollars per share. The plaintiff actually owned and had standing in his name on the books of the company the number of shares indicated by, and for which said certificate issued unencumbered by any conveyance or attachment of them.

The foregoing facts, with some others not material to any of the questions decided by the supreme court, were agreed upon by the parties, and a written statement of them was made as being the "case and the whole case,—the truth and the whole truth and "except also errors in dates and figures (the correction of which "is to be allowed) no other evidence shall be allowed."

Upon the foregoing facts, upon a trial by the court of the issue arising on the plea of *non est factum*, the county court, April Term, 1852,—COLLAMER, J. presiding,—rendered judgment for the plaintiffs to recover $1,500,00 and interest thereon from the 21st of August 1851. Exceptions by the defendant.

At the present term of the supreme court the defendant also petitioned for a new trial, setting forth in his petition that after the execution of his bond and before the 21st of August, 1851, the Vermont and Massachusetts Railroad Company united with the Brattleboro and Fitchburg Railroad Company, so that thereafter the said companies constituted but one company under the name of the Vermont and Massachusetts Railroad Company, and that it was the stock of this united company which was tendered to the

defendant on the 21st day of August, 1851, and that this stock was essentially different from that mentioned in the defendant's bond;—that the petitioner had no knowledge or information that his fact was material to his defence, and that his counsel were not advised respecting it, and therefore did not suggest the expediency of having the same incorporated in the case agreed upon, &c.

It appeared by the testimony in support of the petition that the union of the two corporations was effected on the 4th day of June, 1851.

*Wm. C. Bradley* and *P. T. Washburn* for the defendant.

There was no sufficient tender of performance on the part of the plaintiff who should have attended at the office of the company ready to transfer the stock if the defendant would accept it. *Marlborough M. Co.* v. *Smith,* 2 Conn. 579 *Northrop* v. *Newton & B. T. Co.,* 3 Conn. 544.

The defendant's contract had reference to the same stock he sold to the plaintiff, who by selling it to a third party thereby rescinded the contract between him and the defendant; and the defendant was under no obligation to receive the stock offered to him on account of the previous issue of depreciated stock by the company.

The agreement was a wagering contract upon which no action can be maintained in this state ; *March* v. *Piggot,* 5 Burr 2802. *Jones* v. *Randall,* Cowp. 37. *Good* v. *Elliott,* 3 Term 693. *DaCosta* v. *Jones,* Cowp. 729. *Roebuck* v. *Hammerton,* Cowp. 737. *Danforth* v. *Evans,* 16 Vt. 544. *Collamer* v. *Day,* 2 Vt. 144. *Tarleton* v. *Baker,* 18. Vt. 9. *Bryan* v. *Lewis,* 21 C. L. R. 467. Chitty on Contracts, 332.

The stock tendered was not of the same corporation with that which the defendant agreed to receive and pay for; *Union Locks & Canals* v. *Towns,* 1 N. H, 44. *Middlesex T. Co.* v. *Locke,* 8 Mass 268. *Hartford & N. Haven R. Co.* v. *Croswell,* 5 Hill 383.

*Asa Keyes* and *Daniel Kellogg* for the plaintiff.

The tender of the stock was sufficient. It was as much transferred by the delivery of the certificate and the unrecorded assignment, as is land conveyed by the delivery of the deed of it. The record is the only evidence of title to be perfected at the peril of

the assignee. Rev. Stat. of Mass. Ch. 29 § 52. *Frost* v. *Clarkson*, 7 Cow. 24. *Gilchrist* v. *Pollock*, 2 Yates 18. *Sabin* v. *W. Bank*, 21 Vt. 362. *Eastman* v. *Fiske*, 9 N. H. 182.

The bond calls for " twenty shares." Any twenty shares answers the contract. *Frost* v. *Clarkson* and *Eastman* v. *Fiske*.

The English decisions upon stock jobbing are founded upon the statute Geo. II. Ch. 8. The New York decisions and those of other states are founded upon their own statutes. But then this contract would be good, for Noyes had the stock when the contract was made. *Frost* v. *Clarkson*. *Gilchrist* v. *Pollock*.

The opinion of the court was delivered by

ISHAM, J. The questions in this case arise on exceptions, and also on a petition for a new trial. The bond in suit was given on the 21st day of August, 1848, conditioned for the payment of fifteen hundred dollars on the 21st day of August, 1851, for which payment, the plaintiff was then to deliver to the defendant twenty shares of the stock of the Vermont and Massachusetts Railroad Company.

To sustain this action, the plaintiff must have performed the conditions of the bond on his part; for the delivery of the stock, and the payment of the money are concurrent acts, and neither can sustain an action without showing a performance, or a readiness to perform on his part, or an excuse for non-performance. It is insisted, that this action cannot be sustained, as the plaintiff has not transferred the stock for which the bond was given. It appears in the case, that on the 6th of February, 1850, the plaintiff held the certificate, and was the owner of twenty shares of the stock mentioned in the bond, and that by the terms of the certificate, they were transferable on the books of the corporation, subject to the provisions of the charter, and the by-laws of the corporation. It also appears, that on the 21st of August, 1851, the plaintiff transferred to the defendant that certificate of stock, with power to perfect a full transfer of the stock to himself, on the books of the corporation. We are satisfied, that the tender of that certificate, with that assignment, was, in that particular, a sufficient performance of the contract on his part. The Vermont and Massachusetts Railroad Company was incorporated by an act of the legislature of Massachusetts. The validity of the transfer of its stock is,

therefore, to be determined by the laws of that state. The statute of that state, to which the charter of this company is made subject, provides, that the capital stock of any railroad corporation shall be personal estate ; that it may be transferred by any conveyance in writing recorded in books kept by the corporation for that purpose, and that no conveyance shall be valid *against any other person than the grantor, and his representatives,* unless so recorded. As against the grantor, the transfer is valid, and vested the title of the stock in the defendant, though not recorded in the books of the corporation. That provision is similar to the statute in this state in relation to the transfer of real estate ; under which, it has uniformly been held, that the title passes to the grantee, as between the parties to the conveyance, though the deed is unrecorded. The authorities on this question are very decisive, that when a party assigns all his interest in the shares of a corporation, surrenders his certificate of stock, and executes a power authorizing the vendee to transfer the shares in due form on the books of the corporation, the title vests in the person to whom the stock is transferred. The object of having the transfer recorded on the books of the corporation is notice, and that is the only object. For that reason the transfer, though unrecorded, is good against the party and all those who have notice in fact of the transfer. This doctrine has been held in several states, and by the supreme court of the United States. *Union Bank* v. *Laird,* 2 Wheat. 390. *Plymouth Bank* v. *Bank of Norfolk,* 10 Pick. 454. *Sargent* v. *Franklin Ins. Co.,* 8 Pick. 90. *Eastman* v. *Fiske,* 9 N. Hamp. 182. *Union Bank* v. *Smalley,* 2 Cowen 770. *U. States* v. *Vaughan,* 3 Binney 394. *Thompson* v. *Alger,* 12 Met. 442. In Connecticut a different rule has been adopted. In the case of *Northrop* v. *Bridgeport T. Co.,* 3 Con. 544, it was held that an actual registry in the books of the company was necessary to pass the title, and *that the registry is the originating act in the change of title.* *Oxford T. Co.* v. *Bunnell,* 6 Conn. 552. That doctrine is not, however, regarded as sustained by the general current of authorities. The stock, while standing in the name of the plaintiff, was probably subject to any attachment at the suit of his creditors, if they had no notice in fact of the transfer, but no difficulties of that character exist in the case. We think, therefore, the defendant obtained a good

title to the stock by that transfer and tender of the certificate, and it was competent for him, on the surrender of that certificate, to make a valid assignment on the books of the corporation and receive therefor a new certificate of the stock to himself. When certificates of shares are given to a purchaser, they are analogous to the sale of chattles. And the assignment and delivering of the certificate is a symbolical delivery of the shares themselves. *Howe* v. *Starkweather,* 17 Mass. 243. *Sargent* v. *F. Ins. Co.,* 8 Pick, 98, 9. That being as complete a delivery as the subject matter admits of, a title to the stock passed by the tender of the certificate, and the defendant's refusal to receive it, leaves the certificate in the hands of the plaintiff as the trustee or bailee of the defendant. 2 Kent's Com. 741 note (b.)

It is contended, however, that the plaintiff cannot recover, as he did not transfer or tender to the defendant, the identical stock which was transferred to the plaintiff on the 21st of April, 1848. On that subject it is sufficient to remark, that it does not appear from any fact stated in the case, that the plaintiff was to keep and re-transfer the same stock at the expiration of three years, and certainly no such provision is contained in the bond. We cannot regard the contract, therefore, as containing any such provision. In the case of *Frost* v. *Clarkson,* 7 Cowen 24, it was held, that a contract for the sale of shares in an incorporated company at the end of sixty days, was not rescinded or rendered inoperative by a sale of a portion of the stock which he then had, intermediate the contract and time of sale. The court observed, " that though the " parties might buy and sell a thousand shares of the same stock, " and though they might not have had a single share one day after " the contract was made, it does not follow that they could " not have fulfilled their contract at any time on demand." The same point was decided in the case of *Shales* v. *Seignoret,* 1 Ld. Raymond 440. The certificate of stock in this case stands on the same footing, and is of equal value, with that sold by the defendant to the plaintiff in 1848. There is no reason, therefore, in treating that contract as having been rescinded or rendered inoperative by a sale of that stock.

An objection is also made to the plaintiff's recovering in consequence of the subsequent issue of various shares of stock at a less

nominal value per share, than that which had been previously issued by the company.    It is insisted, that its effect is to depreciate and change the character and value of the whole stock issued by the company, and render it different from that for which the contract was made.    It appears from the case, that such stock was issued by the company after this bond was executed, and before the transfer and tender of the certificate was made.    The right of the corporation under their charter to issue that stock has not been disputed.    The contract provides for a given number of shares in the Vermont and Massachusetts R. Co.    It specifies the time when it was to be transferred and the sum to be paid for it.    The certificate which was assigned to the defendant was given to the plaintiff before the vote of the corporation creating that stock was passed.    If any difference is made in the dividends of the company, this stock has the benefit of it.    But if no difference is made, and the stock of both issues share alike in the dividends, it will not, we think, affect the liability of the defendant on this bond. When the defendant agreed to become the purchaser of this stock, and to receive a transfer of it on the 21st day of August, 1851, he assumed it, subject to the provisions of the charter of the company, and to the exercise of such corporate powers as should be deemed necessary by the directors.    The issue of that stock will no more constitute a defense to this suit, than it would, if an original subscriber to the stock were sued for assessments, when no act had been done by the directors, but such as was within their corporate powers.    For the same reason, the liability of the defendant on this bond is unaffected by the mortgage of the road and its property for the security and payment of the debts of the corporation. The purchase of the stock was made subject to the exercise of that right, as being within their corporate powers and duty.    *Boody* v. *R. & B. Railroad Co.*, 24 Vt. 662.

It is also insisted, that this bond is void; that no recovery can be had upon it, on the ground that the contract for which it was given is illegal as being a stock jobbing contract, and that all contracts for the sale of stock on time are, in effect, wagers on what will be the value of the stock at the time it is to be transferred. This objection is taken on the authority of *Collamer* v. *Day*, 2 Vt. 144, in which it was held, that all contracts in the nature of wagers

are illegal, and cannot be enforced in this state. At common law, with some exceptions, the rule was recognized as being otherwise. The case of *Collamer* v. *Day* has, however, never been questioned in this state, and we feel no disposition to do it. Contracts for the sale of stock of this character on time are valid at common law, and can be enforced by action. The statute 7 Geo. 2, Ch. 8, made perpetual by 10 Geo. 2, Ch. 8, has rendered some contracts of that character illegal. They are rendered void so far as the *public stocks* of that country are concerned, when the seller had no stock at the time of making the contract, and none was ever intended to be transferred by the parties, but their intention was to pay the difference merely that may exist between the market value of the stock at the time of the transfer, and the price agreed to be paid. Such contracts are rendered void by that statute, and are treated as wagering contracts; " the seller virtually betting that the stock " will fall, the buyer, that it will rise." Chitty on Bills 112, note (w). It has been held, that railroad stock is not within the act; *Hewett* v. *Price,* 4 Man. & Gran. 355. 3 Railway Cas. 175. *Fisher* v. *Price,* 11 Beav. 194. In the case of *Mortimer* v. *McCullon,* 6 M. & Wels. 69, Ld. Abinger observed, " that the act " was made for the purpose of preventing what is declared to be " illegal trafficking in the funds by selling ficticious stock merely " by way of differences; but it never was intended to affect *bona* "*fide* sales of stock." *Ellsworth* v. *Cole,* 7 M. & Wels, 30. 2 Kent's Com. 468 note (b). In the case of *Grezewood* v. *Blanc,* 20 Eng. Law & Eq. Rep. 290, it was held, that a colorable contract for the sale of railroad shares, where no transfer is intended, but merely " *differences,*" amounting to the rise or fall of the market, it is gaming within the 8 & 9 Vict. Ch. 109, § 18. 11 Common Bench R. 538. Whether a contract that would be rendered illegal by 7 Geo. 2, or the statute 8 & 9 Vict. would be treated as void in this state, on the authority of the case of *Collamer* v. *Day,* we are not under the necessity of deciding, as we are satisfied that this case has none of the elements of such a contract. The plaintiff in this case was the owner of the stock long before the time it was to be transferred; an actual transfer of stock was not only intended, but made on the day specified so as to vest a title to the same in the defendant, and the suit is now brought, not for

*differences* on a fictitious sale, but for the price agreed to be paid on the transfer of the stock. That such a sale and contract is legal, we have no doubt. Under the late English cases, the doctrine seems now well established, " that when a man sells stock of which " he is not possessed, and afterwards buys it, and transfers it to " the vendee, he may, notwithstanding the statute, maintain an " action for the price." Byle on Bills 194. *Mortimer* v. *Mc Cullan*, 7 M. & Wels. 20. 9 M. & Wels. 636. 6 M. & Wels. 58. 2 Kent's Com. 468, note (b). In this country such sales of stock have been frequently sustained. *Frost* v. *Clarkson*, 7 Cowen 29, *Eastman* v. *Fisk*, 9 N. Hamp. 182. *Thompson* v. *Alger*, 12 Met. 428. *Gilchrist* v. *Pollock*, 2 Yeates 18.

In the case of *Bryan* v. *Lewis*, Ry. & Moody, 386, it was held by Lord Ch. J. ABBOTT, " that if a man sell goods to be delivered " at a future day, and neither has the goods at the time, nor has " entered into any prior contract to buy them, but means to go into " the market and buy the goods which he has contracted to deliver, " he cannot maintain an action for damages for non-performance " of the contract." The same doctrine had previously been ruled by the same judge, in the case of *Lorymer* v. *Smith*, 1 B. & Cres. 1. In relation to those cases, however, it is sufficient to observe that, that doctrine has never been subsequently recognized in the English courts; but, on the contrary, those cases have been directly overruled in the exchequer, by the cases of *Hibblewhite* v. *Mc-Morin*, 5 M, & Wels. 462, and *Mortimer* v. *Mc Cullen*, 6 M. & Wels. 75. We think, therefore, that the plaintiff is entitled to recover on this bond, the price stipulated to be paid for the stock which was transferred to the defendant, on the 21st of August, 1851.

The exceptions are overruled, and the judgment of the county court is affirmed.

In relation to the petition for a new trial, we think, it must be dismissed. As a general rule, to sustain such an application, it must appear, not only that injustice has been done, on the trial of the case, but that there has been no want of diligence on the part of the petitioner; and in no case, will the court exercise that power, unless there is a reasonable certainty that the subject matter, on

which the application is founded, will, on another trial, produce a different result. *Middletown* v. *Adams*, 13 Vt. 285; *Beckwith* v. *Middlesex*, 20 Vt. 593. Assuming that there has been no negligence on the part of the petitioner—that the facts stated in the petition were omitted from the statement of the case by accident and mistake, and that it is competent for the court to exercise that power, where the case is made by the agreement of the parties, and in which they have stipulated that the facts so stated, "is the "case and the whole case, the truth and the whole truth, and that "no other evidence shall be allowed," still, we think, a new trial should not be granted, as the same judgment must have been rendered, if the facts stated in the petition had-been made part of the case.

The union of the Vermont and Massachusetts Railroad Company with the Brattleboro and Fitchburg Railroad Company was effected on the 4th of June, 1851, after these bonds had been given, and before the stock was to be delivered. It is unnecessary, in the disposition of this question, to inquire what effect the union has had upon the value of the stock of these different companies, or whether the franchises and property of the latter have become the property of the former company. It will be perceived that, by the charter of the Vermont and Massachusetts Railroad Company, a union of that kind was contemplated and allowed. A specific provision for that purpose was granted to that corporation, in their charter. In forming that union, that corporation was only exercising its corporate powers, subject to which, the stock was taken by the original subscribers. When the defendant gave his bond to purchase and receive twenty shares of the Vermont and Massachusetts railroad stock, and bound the plaintiff by his bond to transfer it to him, he assumed the obligation of the purchase, subject to the exercise of that right by the company,—for it was the exercise of a corporate power, which they had at the time, and previous to the execution of this bond. Those who were stockholders in that company before the union, remain stockholders in the company since they have become united. The company are acting under the same charter, they are in the enjoyment of the same franchises, and are only exercising an extended power, subject to which the whole stock of the company is held.

We do not perceive that any such provision is made in the original charter of the Brattleboro and Fitchburgh Railroad Company. The power to make that union was given to them by their amended charter, granted in 1849, after these bonds were given. If this bond had been given for the transfer of the stock of that company, different questions would arise from those which are now presented. But it is not competent for the stockholders of the Vermont and Massachusetts Railroad Company to urge objections, which might be proper when taken by the stockholders of the Brattleboro and Fitchburgh Railroad Company; for, by becoming stockholders in the Vermont and Massachusetts Railroad Company, or purchasers of its stock, they have assented to the provisions of that charter, and to the exercise of all their corporate powers. The union of these companies, it is stated, was effected without any agency or participation of Mr. Noyes, and the certificate of stock which was assigned to the petitioner, was given before that union was formed. The petitioner, therefore, stands on the same footing, and the shares which were transferred to him are no more affected by that union, than are the identical shares which were transferred by him to Mr. Noyes, on the 21st of August, 1848. If the union of the companies was legal, the petitioner has no legal ground of complaint, for it was one of the contingencies of his purchase. If the act was illegal, and an unlawful exercise of authority, by the directors, it is a matter which may be resisted by the petitioner, as one of the stockholders of the company. In either event, it will be no defense to this suit.

The petition must be dismissed, with costs.