JOHN H. CHEEVER *v.* CHRISTOPHER MEYER AND L. A. DREW.

[ IN CHANCERY. ]

*Attachment of Capital Stock of Railroad Company. Record of Transfer.*

H. applied to the orator for a loan, and the orator executed his promissory note for the required sum, at sixty days, payable to H. and another, and delivered it to H., who agreed to pay it at maturity. The orator at the same time took from H., as security for the payment thereof, a certificate of stock that H. then owned in a railroad company in this State. On the face of the certificate were the words, " transferable in person or by attorney on the books of the company only on surrender and cancellation of this certificate"; and they were but expressive of the requirements of the by-laws of the company. On the back of the certificate was a blank form of assignment, containing a clause for constituting the assignee the attorney of the assignor for making " the proper transfer on the books of the company"; which H. signed and sealed. H. made default in payment of the note, and the orator had it to pay. The defendant, to whom H. was indebted, afterwards brought suit against H. and caused the stock to be attached, and obtained judgment and execution. Not till after the attachment was made did the orator apply to the company for a transfer of the stock on the company's books; but the defendant before that time had knowledge of facts whereby he was put on inquiry as to the assignment thereof. *Held*, that the provisions for record were for notice, but that as the defendant in fact had notice, he acquired no lien by his attachment, and should be perpetually enjoined from selling the stock.

APPEAL from the Court of Chancery. The bill prayed that the defendants be restrained from selling on execution certain shares of stock on which the orator had a lien, and for general relief.

It appeared from the bill, answer, and testimony, that, on November 9, 1875, John Q. Hoyt, of New York, who was the owner of two hundred and fifty shares of stock in the Central Vermont Railroad Company, applied to the orator, who also resided in New York, for a loan of $10,000. The orator thereupon executed and delivered to Hoyt his promissory note of that date, for that amount, payable in sixty days, to Hoyt and A. McKinney, and took from Hoyt his certificate of said stock, which was as follows:

STATE OF VERMONT.

CENTRAL VERMONT RAILROAD COMPANY.

SHARES $100 EACH.

This is to certify that John Q. Hoyt, of New York City, is entitled to two hundred and fifty shares of the capital stock of the Central Vermont Railroad Company . . . transferable in person or by attorney on the books of the company, only on surrender and cancellation of this certificate. . . .

The blank assignment on the back of the certificate contained a clause for constituting the assignee the attorney of the assignor for making " the proper transfer on the books of the company", and was signed and sealed by Hoyt. It was then agreed that Hoyt should pay said note at maturity, and that the orator should have said stock as security ; but it was also agreed that whoever might discount said note should hold the stock certificate as collateral security for its payment, and that agreement was incorporated in the note. The note was discounted by Commodore C. K. Garrison, and the orator delivered the certificate to him to be held as aforesaid. Hoyt made default in payment of the note, and on its maturity, on January 11, the orator paid it, and took back the certificate, which he afterwards held as security for repayment from Hoyt. On or about February 23, the defendant Meyer, also of New York, to whom Hoyt was largely indebted, sued out a writ of attachment against Hoyt, returnable to Chittenden County Court, which he procured to be placed in the hands of the defendant Drew, sheriff of that county, for service ; and Drew thereon attached said stock, which still stood in Hoyt's name on the books of said company, by leaving a proper copy of the writ with the clerk of the company. Such proceedings were thereupon had

that Meyer obtained a judgment, and an execution thereon in due form, which he placed in the hands of Drew, who would have sold the stock thereon but for an injunction issued in this cause. The orator made no demand to have the stock transferred to himself on the books of the company until March 8, 1876, when he sent the certificate to the treasurer of the company, with a request that the transfer be then made. The request was refused because of the attachment. Up to that time the company had had no notice of the assignment of the certificate to the orator. The bill alleged that Hoyt had become insolvent, and charged Meyer with having had notice, before he made his attachment, that Hoyt had disposed of the stock ; but that the answer denied. There was testimony upon that question. It was stipulated that the by-laws of said company relating to the transfer of stock of said company, adopted on May 22, 1874, were, so far as material, as follows :

All transfers of stock shall be made in the usual way by the stockholder signing in person or by attorney, in a book to be provided for that purpose, a declaration of sale or transfer, setting forth the number of shares transferred, the person to whom and the time when the same was transferred. At the time of such transfer, the old certificate of the stock so transferred shall, in all cases, be surrendered to be cancelled, and a new certificate issued in lieu thereof.

It was further stipulated that the by-laws continued to be as above stated, except so far as they were varied by vote of directors, on December 3, 1874, whereby it was resolved that a resolution of January 14, 1874, adopting a stock certificate having on its face the words, " transferable in person or by attorney on the books of the company on surrender and cancellation of this certificate by an indorsement thereon, and in the form and manner which may be at the time provided for by the transfer regulations of the company", should be rescinded, and by vote of directors on the same day adopting a form like that of the certificate that was held by the orator.

At the hearing, at the September Term, 1877, Chittenden County, the court, PIERPOINT, Chancellor, ordered and decreed, *pro forma*, that the orator was the owner of said stock, and that the injunction be made perpetual.

Appeal by the defendants.

*B. F. Fifield* and *Noble & Smith*, for the orator.

Meyer stands charged with knowledge of the transfer. He therefore acquired no lien by his attachment. *Black* v. *Zacharie*, 3 How. 483, *per* STORY, J.; *Newbury* v. *Detroit & Lake Superior Iron Manufacturing Co.* 17 Mich. 141; *Scripture* v. *Francestown Soapstone Co.* 50 N. H. 587. Meyer was put on inquiry. His neglect makes circumstances equivalent to record. *Johnson* v. *Willey*, 46 N. H. 75; *Hart* v. *Farmers & Mechanics' Bank*, 33 Vt. 252; *Pinkerton* v. *Manchester & Lawrence Railroad Co.* 42 N. H. 424; *Bank of America* v. *McNiel*, 10 Bush, 54, 60. The transfer, though unrecorded, is good against those having notice. *Noyes* v. *Spaulding*, 27 Vt. 420; *Sabin* v. *Bank of Woodstock*, 21 Vt. 353, 362; *Warren* v. *Brandon Manufacturing Co.* Supreme Court, Rutland County, 1874. The more recent Massachusetts and Maine cases are controlled by statutes. In some cases notice was treated as of no importance—the attaching creditor being permitted to hold the interest had by the debtor at the time, and no more. This is obviously the true rule. *Hart* v. *Farmers & Mechanics' Bank*, 33 Vt. 252; *Pinkerton* v. *Manchester Railroad Co. supra*, and other cases. There is in fact no statute or rule of policy requiring transfer to protect from attachment. The only duty in the premises is conferred by the by-laws, and they were adopted for the internal management of the company. *Townsend* v. *Tuttle*, 1 Stewart, 449; *Black* v. *Zacharie, supra*. Such by-laws have not the effect of public laws, and do not affect strangers. *Sargent* v. *Essex Marine Railway Corporation*, 9 Pick. 201. The transfer of the stock was good against Meyer's attachment, because he had notice *pendente lite*. Story Confl. Laws, s. 396.


*Daniel Roberts* and *Robert Roberts*, for the defendants.

The question is, Was the stock subject to attachment and execution by Meyer for the debt of Hoyt? By the statutes it was personal estate subject to attachment and to transfer "in the manner provided by the by-laws." Gen. Sts. c. 28, s. 9, c. 86, ss. 4, 5. The by-laws directed that the transfer be by the stockholder in person or by attorney, &c., and the certificate bore no-

tice that the stock was so transferable " on the books of the company *only* on surrender and cancellation of the certificate." *Prima facie*, therefore, the stock was subject to such attachment. The burden of defeating that right is on the orator. The effect of the attempted transfer is to be determined by the law of the place where the property is situated. *Wheeler* v. *Winn*, 38 Vt. 122 ; *Noyes* v. *Spaulding*, 27 Vt. 420. Under our statute it is at least questionable, notwithstanding the observations of ISHAM, J., in *Noyes* v. *Spaulding*, whether the Connecticut doctrine referred to by him is not the law of this State. See *Bank of Commerce's Appeal*, 73 Pa. St. 59 ; *Brown* v. *Adams*, 5 Biss. 181. It may be safely admitted, however, that the transfer was good as to the parties to it, and good as to the stock wherever situate, " unless its operation was limited or restrained by some local law or policy of the State where situate." *Hanford* v. *Paine*, 32 Vt. 442. But there was such local law and policy in this State as prevented the transfer from operating against the defendant's attachment. There was the statute prescribing the mode of transfer. RED-FIELD, C. J., in *Hanford* v. *Paine*. There were also other provisions of statute. See Gen. Sts. c. 86, ss. 4, 6, 9, 10, c. 83, s, 39, c. 28, ss. 88, 89. There was also the settled policy of the State, requiring a change of possession to protect property from attachment. *Rice* v. *Courtis*, 32 Vt. 460 ; *Martin* v. *Potter*, 34 Vt. 87 ; BARRETT, J., in *Daniels* v. *Nelson*, 41 Vt. 161. Although this property was not capable of actual manucaption, the law had provided an equivalent, and had declared it personal property subject to attachment. If the stock be treated as a chose in action, then notice of the assignment should have been given. *Rice* v. *Courtis* and *Martin* v. *Potter*, *supra.* The strictness of this rule of policy is shown in the requirement when property that is sold is in the hands of a third person. *Whitney* v. *Lynde*, 16 Vt. 579. The mode of transfer pointed out by the statute is the only one the public is bound to regard. *Sabin* v. *Bank of Woodstock*, 21 Vt. 353. The orator might be entitled to a reasonable time to procure a record to be made, but the delay subjected the stock to attachment. *Pinkerton* v. *Manchester & Lawrence Railroad*, 42 N. H. 424 ; *Williams* v. *Mechanics' Bank*, 5 Blatch. 59.

That an attachment takes precedence of an unrecorded transfer of stock, was decided in *Warren* v. *Brandon Manufacturing Co.*, Supreme Court, Rutland County, February Term, 1874 ; and see *People's Bank of Bloomington* v. *Gridley*, 91 Ill. 457 ; 1 Am. Railw. Cas. 127, note *per* REDFIELD ; *State Insurance Co.* v. *Sax*, 2 Tenn. Ch. 507 ; *Union Bank of Georgetown* v. *Laird*, 2 Wheat. 390 ; *Fisher* v. *Essex Bank*, 5 Gray, 373 ; *Skowhegan Bank* v. *Cutler*, 49 Me. 315 ; *Blanchard* v. *Dedham Gas Light Co.* 12 Gray, 213.

The stock was never so assigned to the orator as to make him its legal owner.   Such stock is personal property, and has not, nor has the certificate thereof, any of the qualities of commercial paper.   *Weaver* v. *Barden*, 49 N. Y. 286 ; *Bank* v. *Lanier*, 11 Wal. 369 ; *Hall* v. *Rose Hill & Evanston Road Co.* 70 Ill. 673 ; *Shaw* v. *Spencer*, 100 Mass. 382.   At most the orator was only a pledgee ; Hoyt was still general owner.   *McDaniels* v. *Flower Brook Manufacturing Co.* 22 Vt. 274 ; Angell & Ames Corp. 99.

If it be said that notice before levy is equivalent to notice before attachment, likening the case to *Hackett* v. *Calender*, 32 Vt. 97, and to *Hart* v. *Farmers & Mechanics' Bank*, 33 Vt. 252, the answer is, that the doctrine of those cases is applied to real estate only, and only to cases of trust estates where the equitable title was originally in some party other than the debtor, and the debtor was only a dry trustee, and where this fact was indicated by a possession of the *cestui que trust* in the one case, and what was equivalent in the other.

The opinion of the court was delivered by

Ross, J.   The contention is in regard to two hundred and fifty shares of the stock of the Central Vermont Railroad Company, formerly the property of John Q. Hoyt.   The orator claims the same by purchase, and the defendant Meyer by attachment, Drew being the officer who made the attachment, and who holds the execution in favor of Meyer against Hoyt, with directions to levy it on the stock in question.   The corporation being located in this State, the rights of the parties to its stock, when brought in question by an attachment under the laws of this State, must be deter-

mined by the laws of this State applicable to the transfer and
attachment of such property. *Rice* v. *Courtis*, 32 Vt. 460.  By
section 9, c. 28, Gen. Sts. it is enacted : " The shares in the capi-
tal stock of any railroad corporation shall be deemed personal
estate, and may be transferred by any conveyance in writing in
the manner provided by the by-laws of such corporation, and shall
be liable to attachment and sale under legal process in the manner
provided for in chapter 86, relative to private corporations."  By
the by-laws of the Central Vermont Railroad Company, its stock
is declared to be " transferable in person or by attorney on the
books of the company only on the surrender and cancellation "· of
the existing certificate, and this provision is incorporated into the
body of each certificate.  By the provisions of chapter 86 of the
General Statutes, such stock may be attached as the property of
the stockholder or of the corporation, by serving a copy of the
writ on the clerk of the corporation, and may be sold on an exe-
cution against either.  In case it is sold on an execution against
the corporation, the stockholder is given a right of action against
the corporation to recover the damages he has sustained by reason
of such sale.  The clerk of a railroad corporation is required to
reside and keep his books and office in this State.  Gen. Sts. c.
28, ss. 3, 93.  He is to make returns to the several towns of the
names of the stockholders resident in such town, with the number
of shares owned by each, and to make a like return to the State
Treasurer of non-resident stockholders.  The company is required
each year to lodge with the Secretary of State the names of its
clerk and treasurer, and their place of business within this State.
Thus, the same section of the statute which defines the character
of such property, provides for both its transfer and attachment.
The particular manner of its transfer, except that it must be in
writing, is left to be regulated by the by-laws of the corporation.
Such by-laws being provided for by statute are binding, and, as
between the corporation and its stockholders, have all the force
of a positive statute.  It cannot be questioned but that as regards
the corporation, so far as determining who has a right to vote and
receive dividends on its stock, no valid transfer thereof can be
made, except in compliance with the by-law.  The provisions of

the statute relative to the residence of the clerk of such corporations, and the attachment of the stock by serving the writ on him, indicate a clear intention on the part of the Legislature to make the condition of the stock as to ownership at that place, determinative of the right of attaching creditors in making such attachments.    The nature of the property is such, being but a right to participate in the exercise of the franchises of the corporation, in the profits derived therefrom, and in the distribution of its assets on the dissolution and final winding up of its concerns, as to require that a record should be kept by the corporation which shall be determinative of the persons who are entitled to such participation and obliged to bear the burden of taxation imposed upon such property, and also determinative of the ownership of such right, both as to purchasers and attaching creditors.    The necessity, policy, and reasons for such a record are quite analogous to those which require a record of the title to real estate, and quite as imperative.    Without such a record, the corporation, the public, purchasers, and attaching creditors, would be exposed to frequent and extensive frauds.    The record kept by the corporation, so far as the corporation itself is concerned, and we think so far as concerns the public, purchasers, and attaching creditors, furnishes the best evidence of the ownership of its stock at any specified time.    The certificates of stock issued by it to the several stockholders, are but transcripts from the records, and therefore only secondary evidence of such ownership.    Such certificates are the evidence issued by the corporation to the stockholder of his ownership of its stock, and binding on the corporation.    It is evidence which he has to show to others and to the corporation that he is entitled to share in its rights, profits, and property.    The sale of such stock, with a transfer of his certificate indorsed with a power of attorney to the purchaser to make the necessary transfer on the books of the corporation, transfers to the purchaser the equitable interest and legal right of the vendor in the property evidenced by the certificate assigned.    It completes the transaction between the vendor and purchaser.    But as regards the corporation, and those who have a right to look to its records for the owners of its stock, the transaction is incomplete.    The purchaser

does not become vested with the absolute title to such stock—does not become a stockholder in the corporation—until the purchased stock is transferred to him on the books of the corporation. The delivery of the certificate with a transfer and power of attorney thereon to the purchaser, is a symbolical delivery of the property evidenced by the certificate, the only delivery which the property or right to property thereby evidenced is capable of. What has thus far been said is what has been held in nearly all the adjudged cases describing and characterizing this species of property, and the relations of it and its owner to the corporation, the public, purchasers, and attaching creditors, and is in harmony with what has been held and said thereof by this court in *Sabin* v. *Bank of Woodstock*, 21 Vt. 353; *Noyes* v. *Spauldiug*, 27 Vt. 420. In *Sabin* v. *Bank of Woodstock*, REDFIELD, J., says : "We entertain, however, upon the present argument, no reasonable doubt that the mode of transfer of stock pointed out in the charter, is the only mode which the public is bound to regard as conveying the title. All persons unaffected with notice to the contrary, are at liberty to act upon the faith of the title being where it appears upon the books of the corporation to be. This view we do not think inconsistent with the notion that any other mode of conveyance may be perfectly good between the parties to it and to all others having notice of it, the same as an unrecorded deed or notice of a mere equity." This was the earliest case where this subject came under consideration in this State, and the doctrine announced, as quoted, has been largely followedin other States, and is now the doctrine generally held. In *Noyes* v. *Spaulding, supra*, the transfer was governed by the laws of Massachusetts, which provided that railroad stocks might be transferred by a conveyance in writing, recorded in books kept by the corporation for that purpose, and that "*no conveyance shall be valid against any other person than the grantor and his representatives* unless so recorded." ISHAM, J., in the opinion, says : "As against the grantor, the transfer is valid, though not recorded in the books of the corporation. . . . The authorities on this are very decisive, that when a party assigns all his interest in the shares of a corporation, surrenders his certificate of stock, and executes a power authorizing

the vendee to transfer the shares in due form on the books of the corporation, the title vests in the person to whom the stock is transferred. The object of having the transfer recorded on the books of the corporation is notice, and that is the only object. For that reason, the transfer, though unrecorded, is good against the party, and all those having notice in fact of the transfer." He cites authorities from the United States and several state reports, and denies the doctrine held in Connecticut, "*that the registry is the originating act in the change of title*", as unsustained by the authorities, and adds : " The stock while standing in the name of the plaintiff, was probably subject to any attachment at the suit of his creditors, if they had no notice in fact of the transfer." In the unreported case, *Warren* v. *Brandon Manufacturing Co.*, relied upon by both parties, it appeared that the stock, which the defendant refused to transfer on its books, and for which refusal the action was brought, was in April, 1870, pledged by the owner thereof, as collateral security for the payment of $10,000, by the delivery of the certificate to the pledgee with a written transfer on the back, with power to sell if the debt was not paid at maturity, and also with power to the pledgee to make the transfer on the books of the company. The debt was not paid at maturity, and the stock was sold, and the suit was in the name of the vendee, but for the benefit of the pledgee, the purchaser having bought it for the pledgee. Before the sale by the pledgee, the defendant in good faith and without notice, so far as appeared, attached ten shares of the stock. The purchaser then demanded a transfer of the whole stock. The defendant refused to transfer any of it, there being ninety shares then unattached. The defendant subsequently attached the remaining ninety shares. The County Court found the defendant guilty, and rendered judgment against it for the value of the ninety shares. Both parties excepted. The Supreme Court affirmed the judgment of the County Court, upon the ground that the first attachment justified the defendant's refusal to transfer upon its books to the pledgee or the purchaser the ten shares which it had attached in good faith without notice, but did not justify the refusal to transfer the other ninety shares, and that its subsequent attachment thereof with notice was invalid to

hold the stock as against the pledgee, or purchaser from the pledgee. These are all the decisions in this State which bear directly upon the issues made by the parties in this case. The facts in this case to which these principles apply are, that the orator, November 9, 1875, made his note for the benefit of Hoyt on sixty days, and received from Hoyt the certificate of the stock in controversy, with an assignment thereof on the back in blank, containing power of attorney to blank to make a surrender of the certificate and a transfer of the stock on the books of the company. When his note fell due, January 11, 1876, the orator had it to pay. The defendant caused the stock to be legally attached February 23, 1876, on a suit in his favor against Hoyt. No demand to have the stock transferred to the orator on the books of the corporation was made until March 8, 1876, nor had the corporation until that date any notice of the transfer of the certificate to the orator. The orator charges that the defendant had notice that Hoyt had disposed of the stock before he made his attachment. From the evidence in the case, we think it is established that the defendant knew that Hoyt had absolutely or conditionally parted with the stock in question, and had sufficient knowledge to put him upon inquiry in regard to whose hands it was then in—such knowledge that if he had pursued the inquiry he would have found the certificate properly transferred in the possession of the orator. Hence, he is affected with knowledge of the fact that the orator was the equitable owner of the stock at the time he caused it to be attached. We cannot yield to the claim of the defendant that if put upon inquiry he was only bound to inquire at the office of the corporation where the record of the stock was kept. Where the purpose of the record, as of real estate, or of vendors' liens upon personal property, or of stock in corporations, is, in whole or in part, to furnish information to purchasers and attaching creditors of the true state of the title of the property, the record, if made, is conclusive upon such purchaser and attaching creditor ; and if, when not made, such purchaser or attaching creditor, when put upon inquiry, be bound to inquire only at the office where the record is required to be kept, in no case could he be effectually put upon inquiry. In such cases a person is put upon in-

quiry when he has such information that if he follow the clew furnished thereby, it will lead him to a knowledge of the true state of the title *aliunde* the record. Affected with this knowledge, the defendant's attachment, on the principles and decisions heretofore stated, must yield to the equitable title which the orator had antecedently acquired to the stock in question.

The defendant claims that the court should go farther and hold that stocks which are so much dealt in by brokers and in the money markets, often distant from the office where the record is required to be kept, are subject to the rule which the court enunciated in regard to real estate, where the title is held in trust—in *Hackett* v. *Collender*, 32 Vt. 97 ; *Hart* v. *Farmers & Mechanics' Bank*, 33 Vt. 252—that a creditor by attachment acquires only such right and property therein as his debtor has when the attachment is made. But we have no occasion for such holding in this case.

*Decree affirmed, and cause remanded.*