ORLEANS,
March,
1833.

HEMAN GIFFORD *vs.* DAVID FORD.

The jury may find that a party signed an instrument not witnessed, by comparing the hand-writing to such instrument with the hand-writing to another instrument, which the party admits he signed.

Where A. was owing B. $23, executed a bill of sale, absolute on the face of it, to B., of A's household goods; and at the same time A. rebeived back the goods, and gave his receipt for them to B., therein promising to return said goods to B. any time after one year on demand: And then and there a parol agreement was made between A. and B. that the bill of sale should be void, and the title of the goods should revest in A. if he paid B. the $23 in one year.— Held, this was a mortgage of A's goods to B. to secure the payment of $23 in one year, and if the money was not paid, B's title to the goods became absolute.

The difference between a mortgage and pawn of goods considered.

A conditional, as well as an absolute sale of goods, may be fraudulent as to creditors.

The defendant cannot set up fraud, as to his creditors, to avoid the contract.

The contract being a mortgage, the Court did right in not charging the jury, that it was no more than a simple pledge, or pawn.

Trover will lie for the goods.

This was an action of *trover and conversion* for certain household goods. Plea, *not guilty.* Issue joined to the country.

On trial, the plaintiff offered, and gave in evidence, a certain receipt in writing, of the following tenor:

" Received of Heman Gifford the following articles, viz: Six black ornamented dining chairs; one three and a half feet cherry table, one gilt framed looking glass of a small size; one cherry light stand, with a drawer in it; one good feather bed, pillows, coverlet, with the bed-tick belonging to the same: all which property I promise to safely keep, and return to said Gifford or his order, any time when demanded, after the 10th day of April next.

" (Signed)                    DAVID FORD.
" Sharon, April 10th, 1828."

The defendant acknowledged in Court he signed said receipt.

The plaintiff also offered in evidence an absolute bill of sale of said household goods, with a price annexed to each article, all amounting to $32, dated at Sharon, April 10th, 1828, and closed in these words: " Received payment in full. David Ford."

The defendant objected to the said bill of sale going to the jury as evidence, until the hand-writing of the defend-

ORLEANS,
March,
1833.

Gifford
vs.
Ford.

ant was proved. As the hand-writing to the receipt was acknowledged by the defendant to be his, the Court admitted the bill of sale to go to the jury for them to find the hand-writing thereto, by comparing it with the hand-writing to the receipt.

The plaintiff also gave in evidence the deposition *Geo. Parkhurst, Jr.*, which, among other things, tended to prove, that before the commencement of this action, he being authorized by the plaintiff to demand of the defendant the goods described in said receipt, did demand the same of the defendant at Burlington, 11th September, 1829, and he refused to deliver them up: whereupon this action was brought.

The defendant then gave in evidence another deposition of the said *Parkhurst*, which tended to show, that said *Parkhurst* saw the defendant sign said bill of sale.—Said depositions also tended to show, that at the time the defendant executed said bill of sale and receipt to the plaintiff, it was ascertained by the parties, that the defendant was owing plaintiff twenty-two or twenty-three dollars, and it was agreed between them, that if the defendant paid the plaintiff that sum by the 10th of April, 1829, the goods should be the defendant's; and if he did not pay that sum by that time, the goods should be the plaintiff's absolutely.

The defendant contended, and requested the Court to charge,

1st, That if the jury should find that the defendant had the possession of the goods by contract, the plaintiff could not maintain trover for them.

2d, That if they should find that the defendant was owner of the goods, and had made them over to the plaintiff as collateral security, for the payment of the sum already due, it would constitute no more than a pledge.

3d, That if the goods were pledged to the plaintiff, and he suffered them to remain in defendant's hands, or go immediately back into his possession, the aforesaid property created by the bailment was determined, and gone.

4th, That in case of a pledge of personal property, the general property remains in the pawnee, and only the special property passes to the pawner.

ORLEANS,
March,
1833.

Gifford
vs.
Ford.

5th, That all the circumstances attending the transfer by bill of sale, and receipt, are to be considered as part, and parcel of the transaction.

6th, That this transaction cannot be regarded as a mortgage of personal property ; but at most merely as a pledge.

7th, That a recovery in this action would be no bar to a recovery on the note for $23 held by the plaintiff against the defendant, & for which the same property was pledged.

8th, That to entitle the plaintiff to recover, the jury must find, that the *demand* was not only *legally* made, when made, but also that it was made at *Sharon*, where the bill of sale and receipt were executed.

9th, That the special owner of goods cannot maintain trover against the general owner.

10th, That if they find that the defendant has violated his contract with the plaintiff, the proper remedy of the latter is not trover ; but an action for the breach of the contract.

But the Court, instead of charging in all respects as required, charged the jury as follows :

If the jury find, that the goods and chattels, described in the plaintiff's declaration, were mortgaged by the defendant to the plaintiff, to secure the payment of a balance of twenty-two or twenty-three dollars to the plaintiff from the defendant, and said goods and chattels were to become the plaintiff's *absolutely*, if said balance was not paid to the plaintiff by the 10th of April, 1829 ; and also find that said balance was not paid the plaintiff by the 10th of April, 1829, then said goods and chattels on that day become *absolutely* the plaintiff's, and he was entitled to the possession of them on demand.

It is in evidence that the goods and chattels were demanded of the defendant by Mr. Parkhourst, on the 11th of September, 1829. Parkhurst held, and presented defendant's receipt for the goods and chattels at the time he demanded the same. This holding the receipt was *prima facie* evidence that he was agent of the plaintiff to make the demand, and take possession of the goods and chattels. Moreover, Parkhurst testifies that he was such agent. As the defendant did not deliver up the goods and chattels to the said Parkhurst when demanded by him as aforesaid,

ORLEANS,
March,
1833.

Gifford
vs.
Ford.

the plaintiff can sustain an action of trover for said goods and chattels. The rule of damages is the value of the goods and chattels converted by the defendant. But in this case, if the jury find that the value is more than the balance, which was the plaintiff's due, the jury may find damages to the amount of said balance, and interest thereon, in as much as the plaintiff consents to this rule.

The jury returned a verdict to the amount of said balance and interest, which verdict the Court accepted, and rendered judgement thereon. The defendant excepts, &c.

The opinion of the Court was pronounced by

BAYLIES, J.—The hand-writing to the receipt was admitted by the defendant to be his, and the County Court suffered the bill of sale to go to the jury for them to find the hand-writing thereto, by comparing it with the hand-writing to the receipt. As this Court have decided, that the hand-writing to an instrument may be found by the jury on comparison of hand-writings, I see no reason why it could not be done in this case. On trial, the hand-writing to the bill of sale was proved by the deposition of —————— Parkhurst, Jr., who said he saw the defendant sign it.— With this evidence, in addition to the comparison of hand-writings, there is no good reason for granting a new trial on suggestion of forgery.

The defendant, in his requests for the County Court to charge the jury, *seemed* to think, that he was sued in trover, either for goods sold, or for goods pledged or pawned, and the action would not lie. But the Court considered, that the goods were mortgaged by the defendant to the plaintiff, to secure the payment of twenty-two or twenty-three dollars, which had not been paid, and the plaintiff's title to the goods had become absolute; and after the goods were demanded, trover would lie. Before we decide that the County Court took a correct view of this part of the case, we will have recourse to the books, and, see if we can find a distinction in the law, between a pledge, and mortgage of goods.

· Mr. *Powell*, in his valuable Treatise on Mortgages, Vol. 1, p. 3, says, " The striking distinction between a mortgage of lands, or goods, and a pawn of goods, is, that in

ORLEANS,
*March,*
1833.

Gifford
*vs.*
Ford.

the former case, the mortgagee has, after the condition for-feited, an absolute interest in the thing mortgaged, where-as the pawnee has but a special property in the goods, to detain them for his security. A mortgage is a pledge, and more; for it is an absolute pledge, to become an absolute interest, if not redeemed at a certain time : a pledge is a deposit of personal effects, not to be taken back, but on payment of a certain sum, by express stipulation, or the course of trade to be a lien upon them." So in the same book, p. 33, *a. n.*, it is said, " That B., super-cargo of a ship, which was to go a voyage to the East Indies, having shipped on board goods and commodities, borrowed money on bottomry of A., and at the same time made a bill of sale of the goods and commodities, and of the produce and ad-vantage thereof, to A., in nature of a mortgage, as a secu-rity for the money lent. The ship went her voyage, and those goods were sold, and others bought with the money arising by the sale, and those again invested in other goods, and so there had been several barters and exchanges of several sorts of goods. The ship returned, and B. died at sea, or on his return home ; and it became a question be-tween a judgement creditor of B., who got possession of these goods, and A., which of them should have the property. And one ground on the part of the judgement cred-itor was, that B's *keeping possession* of the goods after the sale, made it fraudulent, and void as to creditors. *Sed per* Cowper, Chancellor, *the trust of these goods appeared upon the very face of the bill of sale.* Though they were sold to A., yet he trusted B. to negotiate and sell them for A's ad-vantage ; then B's *keeping possession* of them was not to give a false credit to him, but for a particular purpose a-greed upon at the time of sale."—*Bucknal* vs. *Royston,* Pre. Chanc. 285. It was decided in the case of *Edwards* vs. *Harben,* 2 T. R. 587, " That in the transfer of Chattels, possession must *accompany* and *follow* the deed, and conse-quently, that where the assignment, or bill of sale is abso-lute, the possession must be delivered immediately ; but where it is conditional, it will not berendered void by the vendor's continuing in possession till the condition be per-formed. So long ago as the case of *Stone* vs. *Grubham,* 2 Balst. 218, the Court held, that an absolute conveyance,

ORLEANS,
March,
1833.

Gifford
vs.
Ford.

or gift of a lease for years, unattended with possession, was fraudulent; but that if the deed of conveyance be conditional, there the vendor's continuing in possession will not avoid it, because by the terms of the conveyance, the vendee is not to have the possession until he has performed the condition. And in *Kidd* vs. *Rawlinson*, 2 Bos. & Pul. 59, Ld. *Eldon* Ch. J. cites and sanctions the following passage from Bul. N. P. 258: 'The donor's continuing in possession is not in all cases a mark of fraud, as where a donee lends his donor money to buy goods, and at the same time takes a bill of sale of them for securing the money.

*Chancellor Kent*, in his 4th Vol. Com. 132, says, " A pledge or pawn is a deposit of goods, redeemable on certain terms, and either with or without a fixed period for redemption. Delivery accompanies a pledge, and is essential to its validity. The general property does not pass, as in the case of a mortgage; and the pawnee has only a special property. If no time of redemption be fixed by the contract, the pawnor may redeem at any time; and though a day of payment be fixed, he may redeem after the day. A mortgage of goods differs from a pledge or pawn in this, that the former is a conveyance of the title upon condition, and it becomes an absolute interest at law, if not redeemed by a given time; and it may be valid in certain cases without actual delivery."

In *Sturtevant* vs. *Ballard*, 9 John. R. 337, *Kent*, Ch. J., in delivering the opinion of the Court, says, " A conditional, as well as an absolute sale, may equally be fraudulent in point of law, as well as fraudulent in fact, unless the intent of the parties in creating the condition be sound and legal."

In *Barrow* vs. *Paxton*, 5 John. R. 261, the Court say, "The bill of sale stated in the record was a mortgage of goods, and not a technical pledge. A pledge is a deposit of goods to be redeemed on certain terms. Delivery always accompanies a pledge; but a mortgage of goods is often valid without delivery. Here, possession of the mortgagor was consistent with the face of the deed, and there is no pretence of fraud upon the creditors."

In *Holmes* et al. vs. *Crane*, 2 Pick. 607, " A debtor made

ORLEANS,
March,
1833.

Gifford
vs.
Ford.

a bill of sale to his creditor, of machines in a manufactory, on condition to be void on payment of a sum of money, and the vendee took possession by putting his hand on each piece of machinery : the vendee then made a lease of the machines to the vendor, and delivered them to him.   Held, that this bill of sale was a mortgage, and that the possession of the vendor, after sale, was only *prima facie* evidence of fraud, which might be rebutted by showing the transaction to have been *bona fide*."

In *Brown* vs. *Bennet et al.* 8 John. R.  96, the Court say, " A mortgage of goods is a pledge, and more ; for it is an absolute pledge to become an absolute interest, if not redeemed at the specified time.   After the condition forfeited, the mortgagee has an absolute interest in the thing mortgaged ; whereas a pawnee has but a special property in the goods to detain them for his security."

In *Cortelyou* vs. *Lansing, Adm'r,* 2 N. Y. Ca. in Error, 200, the principles stated are, that " on the deposit of a pledge, where no day of redemption is limited, the right of redemption descends to the personal representatives of the pawnor.   If the pawnee sell the pledge before application to redeem, he is answerable for the value of the pledge, at the time of the application."

In *Marsh* vs. *Lawrence,* 4 Cowan, 461, it is stated, "that a bill of sale or assignment of goods, declaring that the object is to secure the vendee as surety for the vendor, and that in case the vendee shall become liable, he may turn out the goods on the execution, or that they should be at his disposal at private sale, he accounting to the vendor for the proceeds, is in the nature of a mortgage."

In *Dawes* vs. *Cope, Assignee,* 4 Bin. 258, the Court decided, that where the deed or conveyance is conditional, or to take effect at some future time, the retaining of possession according to the intent of the deed, is not fraudulent.

The law makes an evident distinction between a pledge and mortgage of goods.   And the County Court, in their charge to the jury, were correct in considering the goods in question mortgaged to the plaintiff, and not merely pledged to secure the payment of the debt which the defendant owed.   After the goods were mortgaged to the

plaintiff, he left them in the possession of the defendant, the mortgagor. Whether, on this account, the law would consider the mortgage fraudulent and void, as to the creditors of the defendant, we are not called upon to decide.— The defendant is not permitted to say it was a fraudulent mortgage of his goods to avoid it; for neither of the parties to the mortgage, though guilty of fraud as to others, can set up such fraud to avoid his contract. This point is well established.—See *Steele* vs. *Brown et al.* 1 Taunt. 381. *Robinson* vs. *McDonnell,* 2 B. & A. 134.—*Peaslee, Adm'r* vs. *Adm'r of Hay,* 1 Chip. Rep. 331.—*Fletcher* vs. *Howard,* 2 Aik. 115.

As the general property in the goods passed to the plaintiff by the mortgage, the defendant could not subsequently acquire that property by merely possessing and using the goods one year, by consent of the plaintiff. So, after the year had elapsed, the plaintiff having demanded possession of the goods according to the tenor of the defendant's receipt, and the defendant having refused to let the plaintiff have the goods, can maintain trover for them.

On the whole, we are satisfied with the proceedings, and judgement of the Court below in this action.

Judgement affirmed.

*Sawyer,* for plaintiff.
*Prentiss,* for defendant.