WILLIAM SAMSON *v.* JASPER A. ROUSE, JULIUS C. HUTCHINS, PETITIONER.

May Term, 1900.

Present: ROWELL, TYLER, MUNSON, THOMPSON and WATSON, JJ.

Opinion filed August 30, 1900.

*Transaction constituting a pledge*—If promissory notes are, without endorsement, delivered by the payee to a creditor as collateral security, the general title to the notes remains in the payee, and the transaction constitutes a pledge, the holder having only the special property and rights of a pledgee.

*Possession essential to validity of pledge*—It is essential to the validity of a pledge of personal property that possession be delivered to the pledgee, and he has a lien upon the property only so long as he retains possession, either actual, or, in certain circumstances, constructive.

*Delivery back of pledge for special purpose does not interrupt possession of pledgee*—If promissory notes, delivered without endorsement by the payee to a creditor as collateral security, are delivered back to the payee for convenience of collection, the payee agreeing to keep the security good at all times by keeping the same notes or by replacing them as collected by others of the same amount, such delivery back is for a special purpose, and does not in law interrupt the possession of the pledgee, so long as the notes so delivered back remain uncollected.

*Pledged notes delivered back to pledgor for collection—When special property of pledgee does not attach to money collected*—If a pledgor of notes as collateral security takes them back from the pledgee for convenience of collection under an agreement that he will on demand return the same notes to the pledgee or replace them with others of the same amount, the special property of the pledgee does not attach to money received by the pledgor in payment of the notes.

*Pledged notes delivered back to pledgor for collection—Agreement for substitution—When pledge fails—Agreement for a pledge does not constitute a pledge*—If pledged notes are delivered back to the pledgor for convenience of collection under an agreement to return them to the pledgee on demand or to replace them with other notes, and other notes are not in fact substituted for the pledged notes when collected, and no particular notes were by the agreement specified to be used in such substitution, the pledge fails. An agreement for a pledge does not constitute a pledge.

*Mingling of pledged notes with other assets—Not practicable to render them indistinguishable*—Notes being distinguishable by dates, times of payment, face value, and names of signers, it is not seen how pledged notes delivered back to the pledgor for collection could before collection be so mingled with other assets of the pledgor as to make them indistinguishable, and to make applicable the principle that if an agent or trustee mingles trust funds with his own so that the trust property cannot be distinguished, the whole will be treated as such.

*Confusion of personal property—Doctrine as to intermixture carried no further than necessity requires*—The doctrine, applicable to the commingling by an agent or a trustee of property held in a trust capacity with funds of his own, is carried no further than necessity requires, and is not applicable to a mingling of pledged notes with other assets, in the absence of evidence tending to show that the pledged notes were thereby rendered indistinguishable.

*The case—Application of foregoing principles*—The petitioner received from a debtor firm certain endorsed notes as collateral security, and afterwards entrusted them to such firm for convenience of collection under an agreement that they, or others of the same amount, should be kept by said firm as such security, and should be delivered to the petitioner on demand. The notes so entrusted to the firm were for a time kept by themselves in an envelope, but were afterwards mingled with other notes, and were collected as they became due, and the money received from their collection was used by the firm in its business. None of them, nor others in lieu thereof, were ever turned over to the petitioner after they were so entrusted to the firm, though at one time the petitioner demanded the collateral called for by the agreement referred to. The assets of the firm, including notes to an amount more than the indebtedness of the petitioner, having gone into the hands of a receiver, it was held that the petitioner had no priority over the general unsecured creditors of the partnership.

CHANCERY. William Samson, a member of the firm of William Samson & Co., brought a bill against Jasper Rouse, his co-partner, returnable to the Court of Chancery for Franklin County at the September Term, 1897, praying, among other things, for the appointment of a receiver of the assets of said firm and such receiver was accordingly appointed. Thereafter Julius C. Hutchins, a creditor of said firm, filed a petition in said cause and the

matter of such petition was heard thereon, and on the report of a special master, at the March Term, 1899, *Start*, Chancellor.

The matter. of the petition, and the decree of the Court of Chancery upon said hearing appear from the opinion. The petitioner appealed.

*Farrington & Post* for the petitioner.

*Rustedt & Locklin* and *Wilson & Hall* for the receiver.

WATSON, J. Prior to October 14, 1889, Julius C. Hutchins, the petitioner, held an unsecured note against William Samson & Company for four or five hundred dollars, and on that day loaned the company a sum of money, which, with the note, amounted to $1500, and took the company's note therefor, and at the same time the company delivered to him certain promissory notes amounting to $2070, secured by liens on personal property, to hold as collateral security. On January 1, 1890, Hutchins, being about to go to California and to be absent from the State a long time, delivered the collateral to the company and took its receipt therefor as follows :

"Montgomery Center, Vt., Jan. 1st, 1890.

Received of J. C. Hutchins notes to the amount of $2070.00 being the same notes turned out to J. C. Hutchins Oct. 14th, 1889, to secure a note given that day of $1500.00, the same to be kept, or the same amount, by William Samson & Co. and to be returned to J. C. Hutchins on demand.

WILLIAM SAMSON & Co."

The notes were thus delivered to the company that they might be collected when due, and for the convenience of the company in collecting, that it might deliver the notes when paid to the parties paying the same. The company was to replace notes collected by other notes, and to keep the security good at all times. Hutchins depended upon the security, and it was delivered by him to the company in good faith and with the understanding that the company was to keep the notes, or other

notes of the same amount, on hand at all times to secure his note against it.

In 1897, the orator and defendant, partners composing the company, being in some difficulty between themselves, were unable longer to carry on the partnership business, and the above named suit was brought; and on August 16, 1897, the receiver was appointed to take charge of the property of the company with power to sell and dispose of the same for the purpose of paying partnership debts. A master was appointed to determine and report the amount due each creditor, and whether the same was secured; and the facts herein stated were found and reported in such proceedings.

None of the collateral notes were ever returned to Hutchins, nor were other notes turned over to him as collateral in lieu thereof. After the notes were delivered to the company by Hutchins, they were kept by it in an envelope separate and distinct from the other assets of the company until about December, 1891, when they were mingled with the other assets. The notes were collected by the company as they became due, and none of them came into the hands of the receiver; but other lien notes of similar character, to more than the amount due on the $1500 note, did come into his hands, as part of the assets of the company. Sometime in July, 1897, Hutchins read the receipt in the hearing of one of the members of the company, and said that as the receipt called for so much collateral on demand, he then demanded it, but his demand was not complied with. There was due on the $1500 note to Hutchins, Feb. 9, 1898, the sum of $1,079.33.

Based upon the foregoing facts, Hutchins preferred his petition in said cause, therein praying that the receiver be ordered and directed, 1st, to deliver to him sufficient collateral of like character with that held by him, to make good the collateral called for in the receipt; or 2nd, that the receiver be ordered and directed to pay the amount due on the $1500 note from the

funds in his hands under the receivership; and for general relief.

The Court of Chancery denied the relief specifically prayed for, and ordered and decreed that the sum found due the petitioner be paid *pro rata* with other unsecured claims proved and allowed against the company, out of the assets that may be in the hands of the receiver for distribution among the general creditors whose claims have been proved and allowed; and upon appeal therefrom, the questions involved are here for determination.

The record shows that the collateral notes were payable to the company, but it does not show that they were indorsed by the company, nor even that they were negotiable in form. The general title to the collateral, therefore, remained in the company, with a special property in Hutchins, which gave him the right of possession until the note secured thereby should be paid. The transaction constituted a pledge, and his rights were those of a pledgee, incident thereto. *Wood* v. *Dudley*, 8 Vt., 430; *Gifford* v. *Ford*, 5 Vt., 532; *Casey* v. *Cavaroc*, 96 U. S. 467.

It is essential to the validity of a pledge of personal property that possession be delivered to the pledgee, and he has a lien on the property only so long as he retains the possession. *Fletcher* v. *Howard*, 2 Aik. 115; *Russell* v. *Filmore*, 15 Vt. 130. Under some circumstances, constructive possession is sufficient to answer the requirements of the law, but when, it is not now necessary to consider; for that phase of the law is not involved in this case.

The delivery of the collateral back to the company for its convenience in collecting, that the notes might be collected when due, and be delivered to the makers, when paid, and to be then replaced by other notes as security, the company undertaking to keep the security good at all times by either keeping the same notes or others of the same amount, was a delivery back for a special purpose, and did not in law interrupt the possession of the pledgee so long as the notes remained uncollected; and had the

same notes, unpaid, come into the hands of the receiver as a part of the assets of the company, there would seem to be no doubt regarding the pledgee's right thereto. *Clark* v. *Iselin*, 88 U. S. 360 ; *Casey* v. *Cavaroc*, 96 U. S. 467 ; *Way* v. *Davidson*, 12 Gray, 465 ; *White & Williams* v. *Platt*, 5 Denio. 269 ; Jones on Pledges, secs. 86–88. But the record states that the notes were collected by the company when due and none of them came into the hands of the receiver.

It is contended by the pledgee that he is entitled to full payment of the $1500 ·note, out of the funds in the receiver's hands, because the company collected the collateral notes and the money received thereby went into the company's business, and to its benefit ; but this contention is unsound. The collateral notes were not delivered back to the company to be collected and the money held for the pledgee. Such was neither the express nor implied understanding of the parties. The company undertook to replace the notes as collected, by other notes as security, to keep the security good at all times, and return the same notes, or other notes of the same amount, to the pledgee on demand. Nor was the understanding of the pledgee different ; for the record states that he understood the company was "to keep these notes, or others of the same amount, on hand to secure his said note at all times." The company had a right to use the money collected, in its business, as it did use it, without accounting therefor. The pledgee waived his privilege therein, and is not now entitled to a preference, over other creditors, in the payment of his note.

Nor has he any lien on the notes that came into the receiver's hands. In the agreement to replace the notes collected, by other notes, no particular notes were specified to be used for that purpose, and the pledgee never had the possession of any of the notes that came into the hands of the receiver. Thus replacing the notes rested wholly in the understanding and agreement of the parties, and such understanding and agreement did not con-

stitute a pledge; because "an agreement for a pledge raises no privilege." *Casey* v. *Cavaroc, supra.*

In Jones on Pledges, sec. 29, the law is stated that, "An engagement to deliver property in pledge amounts to nothing as security. The pledgee acquires no right of property until delivery is actually made. A delivery cannot be dispensed with by a written agreement that the party making the pledge will hold it as the bailee of the pledgee." And in *Donald* v. *Suckling,* 21 Eng. Rul. Cas., at page 328, it is said by Mr. Justice Blackburn, that, "Till possession is given, the intended pledgee has only a right of action on the contract, and no interest in the thing itself."

It is also contended by the petitioner that the mingling of the collateral notes, before they were collected, with the other assets of the company, was such a confusion of property as entitles him to a priority of right over other creditors upon the entire mass of assets. The principle here sought to be invoked, that if an agent or trustee mingles trust funds with his own, the whole will be treated as trust property, except so far as he may be able to distinguish what is his own, is not applicable. A statement of the principle shows its limitation. If the trust property may all be distinguished from the property with which the same is mingled, it will be so done, and the whole intermixture is charged with the trust only when the trust property cannot be thus distinguished. The rule is carried no further than necessity requires. *Frith* v. *Cartland,* 2 H. & M. 417 ; *In Re Hallett's Estate,* 13 Ch. D. 719 ; 2 Kent's Com. 365.·

In the case at bar, nothing is disclosed tending to show that the collateral notes could not have been distinguished at all times before they were collected, and we can conceive of no reason why they could not, as well as property generally, that has distinctive features of its own. It is not within reason to suppose that the company had other notes of the same dates, payable at the same times, of the same face values, and signed by the same persons, with which the collateral notes were mingled·

Upon the facts disclosed by the record, the petitioner has no standing other than as a general unsecured creditor, and

*The decree is affirmed and cause remanded with mandate.*
*Thompson, J., deceased before the case was determined.*