WHITE RIVER SAVINGS BANK *v.* CAPITAL SAVINGS BANK
AND TRUST CO.

May Term, 1904.

Present: ROWELL, C. J., TYLER, MUNSON, START, WATSON, STAFFORD, and
HASELTON, JJ.

Opinion filed November 15, 1904.

*Pledges—Bank Stock—Transfer—Rights of Partner—Reme-
dies of Pledgee—Foreclosure—Liens—Demurrer in An-
swer—Bill in Equity—Necessary Party—Decree by Con-
sent—V. S. 3689.*

Although the charter of a corporation provides that its stock shall
be transferred only upon the books of the corporation, and that
no transfer shall be valid till the assignor shall have paid any
debts due from him to the corporation, the corporation has no
right to refuse to register a transfer of its stock when it had
notice of the transfer before the assignor became indebted to it.

Under V. S. 3689, one to whom a certificate of shares of stock in a
corporation is transferred as collateral security, by indorsement
on the certificate with power of attorney, in blank, to make
transfer on the books of the corporation, has the equitable interest
and legal title of the assignor in the stock represented by the
certificate, though, as against the corporation, *bona fide* purchasers,
and creditors of the assignor unaffected with notice, the transac-
tion is incomplete before transfer on the books of the corporation.

But, as record on the books of the corporation is required for notice
merely, any one having actual notice of the transaction can stand
in no better relation to it than he would if it were completed of
record.

Though the legal title to corporate stock was transferred to a pledgee
as collateral security, the latter took only a special property
therein, the general property remaining in the pledgor; and the
corporation is entitled to a lien thereon for money advanced to
the pledgor after notice of the pledge, subject to the lien of the
pledge.

Notice, given by a letter from the orator's treasurer to the defendant's
treasurer, that the orator held certain stock in the defendant

corporation as collateral security, is notice sufficient to put the defendant on inquiry, and to charge it with such notice of orator's equitable interest in the stock as could have been obtained by inquiry.

When a demurrer, incorporated in an answer to a bill in equity, was heard and overruled and no appeal taken, and later a hearing was had on an agreed statement of facts and a decree entered, *pro forma*, dismissing the bill, from which decree an appeal was taken, the benefit of the demurrer was impliedly reserved to the defendant until the hearing, and the questions raised thereby are properly before the Supreme Court on the appeal from the final decree.

A pledgee of goods does not acquire an absolute title thereto by the failure of the pledgor to pay the debt within the time limited.

A pledgee, upon default of the pledgor, has no right of strict foreclosure, as in the case of a mortgage; but he may maintain a bill in equity, in the nature of a foreclosure, and thereon have a decree for judicial sale of the property, or he may sell the pledge without judicial process, on reasonable notice to the pledgor.

When no time of redemption is limited by a contract of pledge, the right to redeem extends through the pledgor's lifetime, and descends to his personal representatives, unless the pledgee in the meantime calls upon the pledgor to redeem.

When neither the time of redemption nor the manner and time of sale were specified in a contract pledging corporate stock as collateral security, and the corporation issuing the stock claims a prior lien thereon, the pledgee may maintain a bill in equity against the corporation for the enforcement of the pledge.

But when the stock so pledged is also subject to a second lien in favor of the corporation issuing it, the pledgee is not entitled to the relief specially prayed,—to have the stock transferred to it on the corporation's books, and a new certificate issued—but is entitled, under the prayer for general relief, to a decree for a judicial sale of the stock.

When a corporation has immediate notice from the pledgee that certain of its corporate stock is pledged as collateral security, the Statute of Limitations does not run in favor of the corporation, which had acquired a subsequent lien, as against the pledgee's right to enforce the pledge.

When defendant's lien on certain of its corporate stock attached within less than three years and seven months after it had received notice of the pledge thereof to the orator, and it is not

claimed that the orator, after notice of defendant's equities, has ever done anything to defendant's prejudice, the orator is not barred by laches from enforcing the pledge.

Though the pledgor of corporate stock is a necessary party to a suit in equity to enforce the pledge, yet, when the pledgor files the written consent of the pledgee that the stock may be sold under judicial decree, and the proceeds applied first to the payment of orator's debt and interest, and the remainder on a debt to the corporation, which had a lien therefor, the necessity of making the pledgor a party is obviated.

APPEAL IN CHANCERY, Windsor County. Heard at Chambers, April 21, 1904, on an agreed statement of facts. Decree, *pro forma,* dismissing the bill, Rowell, Chancellor. The orator appealed.

The demurrer to the bill was heard at Chambers Feb. 11, 1904, *Munson,* Chancellor. Demurrer overruled; no appeal. The opinion fully states the facts.

*Hunton & Stickney* for the orators.

The assignment to the orator indorsed on the certificate is good in equity, and transferred the owner's interest to the defendant.   1 Cook Corp. Ch. 31, §532; *Sargent* v. *Essex, Etc. Co.,* 9 Pick. 202.

A mere notice to the bank is all that is required to protect the transferee.   1 Cook Corp. § 532; 2 Thomp. Corp. § 2339.

*T. J. Deavitt,* and *Edward H. Deavitt* for the defendant.

A corporation's statutory lien on its stock attaches in favor of all debts due from the pledgor at the time transfer is requested.   Thomp. Corp. § 2388; *Reese* v. *Bank,* 14 Am. Dec. 536.

Orator did not inform defendant that an assignment had been made, but only that it "holds as collateral security."

*Farmers & Mechanics Bank* v. *Hathaway*, 36 Vt. 539; *Russell* v. *Splater*, 47 Vt. 273; *Prout* v. *Vaughn*, 52 Vt. 451.

WATSON, J.   The defendant is a corporation organized and doing business under a special charter, No. 99, Acts of 1890.   The par value of its capital stock is one hundred dollars per share.   The intrinsic value does not appear.   Before and on August 22, 1895, one Charles P. Tarbell held certificate No. 75 issued to him for ten shares of this stock for which he had fully paid.   On the day last named, the orator was the holder and owner of an overdue promissory note signed by Tarbell and others, by which they severally, each as principal, promised to pay to the order of the orator $2,500 on demand with interest semi-annually; and as collateral security for the payment of this note, Tarbell, on the same day transferred to the orator. the said ten shares of stock by an indorsement on the certificate, which indorsement also contained in blank a power of attorney to make a transfer upon the company's books.   At the time of this transfer, the orator notified the defendant by letter that the orator held the said certificate of stock as collateral security to a loan made by it.   Tarbell was not then indebted nor under any liability to the defendant, but subsequently, on March 10, 1899, he executed and delivered to the defendant his promissory note for six hundred dollars for money then advanced to him by the defendant, payable on demand with interest semi-annually.   This note has hitherto been owned by the defendant and is now with some interest thereon unpaid.   Defendant holds some collateral security for the payment of the note but it is of little or no value.

The orator's note was reduced to a judgment at the June Term, 1902.   Upon that judgment a small payment has been made by one of the other signers of the note, and other col-

· lateral security held by the orator has been applied, leaving a balance of more than a thousand dollars still unpaid.

The certificate of stock with transfer thereon was never presented by the orator to the defendant for transfer on its books until December 30, 1902. Prior to that time, the dividends on the stock had been paid to Tarbell without any knowledge of the orator or objection by it.

On December 30, 1902, the orator presented the certificate with transfer thereon to the defendant and requested it to transfer said stock upon its books to the orator and to issue to the orator a certificate therefor. The defendant refused to comply with this request for the alleged reason that such transfer could not be made until the debt due from Tarbell to the defendant was paid, claiming a lien on the stock under section seven of its charter, which reads: "The shares of such corporation shall be transferred only in such manner and under such regulations as shall be prescribed by the by-laws thereof; provided, no transfer shall be valid until recorded by the cashier or treasurer, or in his absence by one of the trustees, in a book for that purpose, nor until the person making the same shall have previously discharged all debts and liabilities due from him to said corporation."

Nothing in this section gives the corporation any right to refuse to transfer stock on the records before the owner thereof becomes indebted or liable to it. Until then, the owner may sell his shares of stock, or transfer them as security in any way he chooses, provided he makes such delivery as the law requires. The statute provides that a transfer, by assignment and delivery, of a certificate of stock as collateral security, is a valid transfer of the shares of stock represented by the certificate, when made to secure a valid debt or obligation, as against the party so transferring the

same, his heirs, executors, administrators, and assigns. V. S. 3689. The orator holds the certificate of stock as security by such a transfer, with power to make a transfer upon the books of the corporation. Under the holdings of this Court, this gives the orator the equitable interest and legal right of the assignor in the stock represented by the certificate, although as against the corporation, *bona fide* purchasers, and creditors of the assignor, unaffected with notice, the transaction is incomplete. Yet as a record on the books of the company is required, not as an essential to pass title between the parties, but merely for notice, anyone having actual notice of the transaction can stand in no better relation to it than one would, had it been completed of record. *Cheever* v. *Meyer,* 52 Vt. 66; *Sabin* v. *Bank of Woodstock,* 21 Vt. 353; *Noyes* v. *Spaulding,* 27 Vt. 420.

Consequently when the defendant received notice from the orator that it held the certificate of stock in question as collateral security, the defendant was bound to respect the rights of the orator as pledgee of the stock. *People's Bank* v. *Exchange Bank,* 116 Ga. 820, 94 Am. St. Rep. 144; *Bank of America* v. *McNeil,* 10 Bush. 54; *Nesmith* v. *Washington Bank,* 6 Pick. 324; *Bradford Banking Co.* v. *Briggs,* 12 App. Cas. 29. By the pledge, however, the orator took only a special property; the general property remained in the pledgor. *Sampson* v. *Rouse,* 72 Vt. 422, 48 Atl. 666. Nor in this respect does the fact that as between the parties to the pledge, the legal title to the stock was transferred to the pledgee make any difference; for such transfer was in law equivalent to the delivery of possession in case of a pledge of corporeal property. *Wilson* v. *Little,* 2 N. Y. 443, 51 Am. Dec. 307; *Rice* v. *Gilbert,* 173 Ill. 348; *Brewster* v. *Hartley,* 37 Cal. 15, 99 Am. Dec. 237. Hence for any credit extended

to the pledgor after notice of the pledge, the defendant can have a charter lien on only the pledgor's general interest in the property subject to the lien of the pledge which it, as well as the pledgor, is entitled to redeem.

It is argued, however, that the notice received by the defendant is not sufficient to supply the requisites of a valid transfer prescribed by the act of incorporation.    The treasurer of the orator sent by mail a letter to the defendant notifying it that the orator held as collateral security to a loan made by it, certificate of stock No. 75 for ten shares of the capital stock in the defendant company, issued to Charles P. Tarbell.    This letter was received by the treasurer of the defendant company.    In the giving of this notice on the one hand and in receiving it on the other, the respective treasurers were in the performance of their official duties.    In legal effect the notice was from the orator to the defendant.    If the notice in itself was not sufficiently full, the defendant was certainly thereby put upon inquiry, and it is chargeable with knowledge of the orator's equitable interest, for by proper inquiry the defendant would have ascertained it.

In its answer, the defendant demurred to the bill for want of equity, and a hearing was had thereon.    The demurrer was overruled, whereupon a hearing was had upon an agreed statement of facts and a decree rendered *pro forma* dismissing the bill.    The case is here on the orator's appeal. The defendant now seeks to take advantage of the questions raised by the demurrer.    It is urged by the orator that, as no appeal was taken to the decree overruling the demurrer, no question raised by it is before this Court.    But under our present practice, we think the benefit of the demurrer was impliedly reserved to the defendant until the hearing, and that questions raised thereby are properly here.    *Town of Westminster* v. *Willard,* 65 Vt. 266, 26 Atl. 952.

With the defendant's contention upon the demurrer, however, that the case presented is not properly cognizable in a court of equity, we cannot agree. The law is well settled that in addition to proceeding personally against the pledgor for his debt without selling his pledge, the pledgee has his election of two remedies upon the pledge itself. That he may file a bill in chancery in the nature of a foreclosure bill and proceed to a judicial sale, or he may sell without judicial process upon giving reasonable notice to the pledgor to redeem and of the intended sale. *Taggart* v. *Packard*, 39 Vt. 628; Bish. Eq. § 359; 2 Kent's Com. 11th Ed. star page 582; 2 Story's Eq. Jur. § 1033; 3 Pomroy's Eq. Jur. § 1412; *Carter* v. *Wake*, 4 L. R. Ch. D. 605; *Vanpill* v. *Woodward*, 2 Sandf. Ch. 143. And proceedings in equity are peculiarly appropriate, where, as in this case, neither the time of redemption nor the manner and time of sale are specified in the contract and the pledgee's rights or powers are being questioned or denied by the corporation which issued the stock pledged, itself claiming a priority of lien thereon. In a court of equity, the pledgee's trust can be made available with proper regard for the rights of all concerned. *Boynton* v. *Payrow*, 67 Me. 587.

The bill prays that the defendant be directed to make a transfer of the stock in question on its books to the orator upon the surrender of said certificate No. 75; and to issue a new certificate therefor to the orator. It also contains a prayer of general relief. But the particular relief thus prayed for should not be granted; for the stock so transferred with a new certificate therefor might by sale or pledge come into the hands of a holder for value without notice of any intervening equity, and thereby the defendant's lien be jeopardized if not defeated altogether.

Under the general prayer, however, the orator may have that relief to which, in the circumstances of the case, it is entitled.

A pledgee of goods does not acquire an absolute title thereto by failure of the pledgor to pay the debt or redeem the property at the time limited. His only interest is a special property to retain the goods for his security. Unlike the case of a mortgage, there is no forfeiture, but the pledgee may enforce his security and cut off the pledgor's right of redemption by a lawful sale of the pledge, and whenever the purpose of the pledge is satisfied, the right to the surplus, if any, is in the pledgor or some one having an interest in the general property under him. As before indicated, the pledgor retains the general title, and if no time of redemption is limited by the contract, the legal right to redeem is with him during his life time unless the creditor, in the meantime, calls upon him to redeem, and if he die without such call, the right descends to his personal representatives. 2 Kent's Com. 582; *Gifford* v. *Ford,* 5 Vt. 532. It follows that the orator has no right of strict foreclosure, as in the case of a mortgage, for this would work a forfeiture where none was intended by the contract and consequently where none could result at law. See *Carter* v. *Wake,* before cited. The pledge should be foreclosed and sold by the orator under judicial decree, that the avails thereof may be applied according to the rights of the parties as herein determined.

The defendant claims the benefit of the Statute of Limitations by its answer, and urges the same in argument. Since the corporation was affected by the contract of pledge after notice equally as much as if the transfer of the stock had been made upon its books, there is no color for the statute's being a bar to the enforcement of such transfer as may be necessary in the execution of the trust.

It is further urged that if the orator has equitable rights which accrued prior to the lien of the defendant, the orator has slept upon them for seven years and they should not now be allowed priority over the defendant's lien. This lien, however, attached with the advancing of money to Tarbell within less than three years and seven months after the defendant received notice of the pledge to the orator. No claim is made that the orator was then guilty of such laches as deprive it of priority. Neither is any claim made that the orator, with notice of the defendant's equities, has ever done any act to the defendant's prejudice. The credit was given to Tarbell by the defendant with full knowledge of the orator's interests. In these circumstances, it would be inequitable to give the defendant greater rights than it took in the creation of its lien.

The unpaid dividends have accrued since the demand was made upon the defendant for a transfer of the stock. No question is made but that they stand as an incident to the stock, and are governed by the same principles.

Since Tarbell still holds an interest in the general property, ordinarily he should be made a party to this suit. But here the orator has filed in this Court the written consent of Tarbell that the stock may be sold by the orator under judicial decree in this case and that the proceeds of such sale may be applied, first, to the payment of the orator's said debt secured by the pledge, and interest thereon, together with the expenses of the sale; and, second, that the balance of the proceeds of such sale, if any there be after the payment of the orator's debt, interest, and expenses as aforesaid, be paid to the defendant to be applied on its said note against Tarbell. Thereby the necessity of making Tarbell a party to the suit has been obviated and the case can proceed to final decree.

*The pro forma decree reversed and cause remanded with mandate.*