MANUFACTURERS TRUST COMPANY, Respondent, vs. CHRIS. SCHROEDER & SON COMPANY and another, Appellants.

*February 11—April 27, 1937.*

For the appellants there were briefs by *Fish, Marshutz & Hoffman,* attorneys, and *I. A. Fish* and *W. H. Voss* of counsel, all of Milwaukee, and oral argument by *Mr. Fish* and *Mr. Voss.*

*Charles H. Quirk,* attorney, and *James T. Friar* of counsel, both of Milwaukee, for the respondent.

The following opinion was filed March 9, 1937:

ROSENBERRY, C. J.    The first contention made by the defendants is that when the plaintiff caused the certificates of stock to be surrendered and reissued in the name of Rechel & Company, it was in effect a reissue to itself and amounted to a conversion.    The defendants rely upon *Toplitz v. Bauer* (1900), 161 N. Y. 325, 55 N. E. 1059; *Allen v. DuBois* (1898), 117 Mich. 115, 75 N. W. 443.

Whether or not a surrender of stock and the reissuance thereof in the name of the pledgee or its nominee is a con-

version depends upon the relation of the parties and the purpose for which it is done. Even though the transfer be absolute in form, it may as between the parties be shown to be a pledge and intended as security. *Town of Mt. Morris v. Thomas* (1899), 158 N. Y. 450, 53 N. E. 214; 6 Thompson, Corporations (3d ed.), p. 95, § 4226, cases cited, footnote 66.

Whether the legal title passes to the pledgee or not, the pledgee takes only a special property in the stock. *White River Savings Bank v. Capital Savings Bank & Trust Co.* (1904) 77 Vt. 123, 59 Atl. 197. Certainly the certificate of stock is not the stock itself, but is the documentary evidence of title to an interest in the corporation. It has been held that a wrongful use of an indorsed certificate may operate as a conversion of the stock. *McAllister v. Kuhn* (1878), 96 U. S. 87; 5 Thompson, Corporations (3d ed.), p. 337, § 3498, and cases cited.

It appears from the evidence that the plaintiff caused the reissuance in the name of Rechel & Company solely for the purpose of facilitating a sale which it had a right to make under the terms of the note. This was not inconsistent with the defendants' right to the stock, nor did it deprive the defendants of any of their rights, nor was the use inconsistent with the purpose and intent of the parties as expressed by their contract.

It is considered, therefore, that under the circumstances of this case, the reissuance of the shares in the name of Rechel & Company did not amount to a conversion. The inability of the plaintiff to deliver the identical piece of paper which the defendant delivered to it in the event the defendants redeemed would not have deprived the defendant company of any right which it had in the shares themselves.

In *Toplitz v. Bauer, supra,* a life insurance policy was deposited as collateral. Upon the trial the jury in that case found that the pledgee had waived strict performance, had by verbal assurance and his conduct led the family of the in-

sured to believe that further indulgences would be given, and that the policy would not be disposed of without giving the family having charge of the maker's affairs a reasonable opportunity to redeem; that the insured was seriously ill to the knowledge of the pledgee; and that without notice the pledgee caused this insurance policy to be surrendered. Neither the verdict of the jury nor the evidence offered and received on the trial indicates the existence of any parallel state of facts in this case. Here repeated extensions were granted to a definite time at the request of the defendants. In this case the plaintiff never indicated that it would grant any indefinite extension, and the extensions granted were upon conditions which were not performed. In addition to that, the plaintiff notified the defendant on the 13th day of April that the securities would be sold on the 15th. The defendants were unable to redeem and the sale went forward. Under such circumstances the trial court correctly held that there was no waiver by the plaintiff of its right to sell under the terms of the note.

A more perplexing question is raised by the contention of the defendants that no sale was proved, and that there was therefore no accounting for the proceeds of the stock, it being further contended that under such circumstances the plaintiff is liable for the value of the stock. Plaintiff attempted to prove the sale by the testimony of its assistant vice-president, Harold H. Kaufman. Mr. Kaufman testified:

"*Q*. Mr. Kaufman, do you know whether or not any of the collateral set forth in the plaintiff's Exhibit 1 was sold? *A*. I do.

"*Q*. What collateral listed under the said note was sold? *A*. All of the collateral was sold."

Witnesses identified the original delivery slips and confirmation slips relating to the sales. These documents showed that certain quantities of the kind of shares deposited by the defendants were sold to or through brokers on certain days.

None of these slips, with one or two exceptions, make any reference to the numbers of the stock certificates. Mr. Kaufman based his testimony to the effect that the sales were made, in part at least, upon these slips. He did not make the sales nor see them made; confirmation slips and the delivery slips show sales of stock of a kind similar to that deposited as collateral and in like quantities. He also testified that the plaintiff might have been selling a great many certificates at that time. It nowhere appears, however, that the plaintiff held or caused to be sold during this time other shares in the corporations named than those deposited with it by the defendant company. Mr. Kaufman testified that all of the shares held by it of the kind deposited were sold and disposed of and the proceeds applied upon the note. The defendants' claim is that this is insufficient. Defendants' claim may be illustrated as follows: Twenty-five shares National City Bank stock were deposited. A sale slip for twenty-five shares National City Bank stock dated April 15, 1933, was produced. But the argument of the defendant is that if the plaintiff company had other shares of National City Bank stock and sold twenty-five shares out of a larger amount, there is no proof that the particular shares deposited by the defendant company were in fact sold. The trouble with the argument is that it nowhere appears that plaintiff held other shares of stock in these various companies than those deposited with it by Chris. Schroeder & Son Company. The testimony is clear that shares in that amount were sold and disposed of by the plaintiff.

Under their counterclaim the defendants assumed the burden of establishing conversion of the stock. The reissuance of the stock not amounting to a conversion, defendants were required to establish by competent proof that plaintiff retained the stock for its own uses and purposes, and did not make sale thereof as required by the terms of the note. If the evidence showed that of a very much larger amount of

the stock standing in the name of Rechel & Company the amount deposited by the defendants had been sold, a difficult question would be presented, and it might be well argued that the plaintiff's proof did not show a sale, but the state of facts upon which this proposition rests is not established by the evidence. We need not determine, where a pledgee having several pledges of the same kind of stock causes the whole amount in its hands to be reissued to it, what proof is then necessary to show that a particular number of shares belonging to a particular pledgor was sold, for the reason that that question is not presented.

*By the Court.*—Judgment affirmed.

The following memorandum was filed April 27, 1937:

PER CURIAM (*on motion for rehearing*). The defendant calls our attention to an error in the statement of facts which should be corrected. In the statement of facts appears the following:

"Prior to April 15, the plaintiff had caused the stock to be registered in the name of Rechel & Company. Thereafter, from time to time, plaintiff contends that it sold and disposed of all the stock left with it as collateral to the note and accounted for the same."

This statement is stricken and in lieu thereof the following is substituted:

"The plaintiff caused the stock to be transferred to Rechel & Company, its agent, which held the stock for the plaintiff. Plaintiff contends that it sold and disposed of all the stock left with it as collateral to the note and accounted for the same, the stock being transferred by Rechel & Company to the several purchasers."

The material question in the case was not the time when the stock was transferred. The transfer of the stock to purchasers was merely a completion of the sale. Whether the stock was transferred to Rechel & Company for pur-

poses of transfer to purchasers before or after the sale is, so far as we are able to see, immaterial.

To the cases cited by the defendant to support the proposition that the transfer amounted to a conversion should be added *Kugel v. Riedell* (1931), 9 N. J. Misc. 360, 154 Atl. 401.

Motion for rehearing denied without costs.